2 Ill. App.3d 864 (1972)
278 N.E.2d 212
DONALD R. DAVENPORT, Plaintiff-Appellant,
v.
BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF PEORIA et al., Defendants-Appellees.
No. 69-106.
Illinois Appellate Court  Third District.
January 14, 1972.
*865 *866 Jack A. Brunnenmeyer, of Peoria, for appellant.
Duane G. Stone, of Peoria, for appellee.
Judgment affirmed.
Mr. JUSTICE SCOTT delivered the opinion of the court:
This is an appeal from the circuit court of Peoria County.
In the early morning hours of August 13, 1968, Donald R. Davenport, the plaintiff, was a police officer in the City of Peoria and with a fellow officer was proceeding home on a motorcycle. Both plaintiff and his companion were off duty but in accordance with the rules of the police department were armed. As plaintiff passed a tavern known as the T.T. Club he voluntarily stopped and entered the place of business. The T.T. Club was considered a low class establishment and located in what was considered a trouble area in the city of Peoria.
The evidence is conflicting but it establishes the fact that outside the tavern there was a confrontation between the plaintiff and one Mike Young. The plaintiff claims that Mike Young and his brother, Jimmie Young, were antagonistic to him because he had previously arrested Mike Young. The plaintiff testified that as the result of threats made by Jimmie Young and an anonymous phone call he was fearful for the safety of his family and himself. At the time of the confrontation outside the T.T. Club the plaintiff testified that he accused Mike Young of making the statement that he wanted to kill him and plaintiff further testified that he warned Mike Young to stay away from his home and not to intimidate his family. Mike Young re-entered the club but soon came outside again, at which time the plaintiff walked up behind him, knocked or pushed him to the ground and then hit him. The plaintiff claims that he thought Mike Young was armed and that he was fearful for his safety, but a search conducted by the plaintiff disclosed that Mike Young was unarmed. Mike Young's testimony was to the effect that after the first conversation with the plaintiff he left the T.T. Club to go to the police station and he was then attacked by the plaintiff and that while lying on the ground he noticed that the plaintiff had a gun *867 so he offered no resistance when plaintiff hit him, called him names and threatened to kill him if he reported the incident to the police.
The incident was so reported to the police by Mike Young and on the following day the plaintiff was suspended by the Board of Fire and Police Commissioners of the City of Peoria as the result of charges being filed by the Superintendent of Police. A hearing on those charges was had on August 29, 1968, and plaintiff was discharged from the service of the City of Peoria Police Department. The commission concluded that the plaintiff was guilty of conduct unbecoming an officer which might be detrimental to the service.
The plaintiff filed for an administrative review of the Board's decision and the circuit court of Peoria County affirmed the action of the Board of Fire and Police Commissioners which resulted in the discharge of the plaintiff. It is from this order that the plaintiff appeals.
 1, 2 The first issue raised on appeal by the plaintiff is that the Commission committed error when it refused to allow impeachment evidence to be presented against witnesses for the prosecution. We agree with plaintiff's contention that it is generally proper to cross examine a witness to bring out unlawful and disreputable occupation and activity as affecting credibility. (People v. Crump, 5 Ill.2d 251, 125 N.E.2d 615; People v. Gibson, (Ill. App.2d), 272 N.E.2d 274.) However, after examining the record we fail to see where the plaintiff was denied the right to impeach the credibility of the witnesses who testified for the Commission. On cross examination Mike Young admitted that he had been arrested for throwing a piece of concrete at a city squad car and for gambling while he was a patron of a disorderly house. O.C. Horton, whose testimony was offered to corroborate that of Mike Young, admitted on cross examination that he had been arrested so many times he had lost count. Jessie Russell and Charles Young both admitted on cross examination that they had been arrested so many times he had lost count. Jessie Russell and Charles Young both admitted on cross examination that they had previously been convicted for felonies. Jimmie Young admitted that he was not gainfully employed yet owned a 1966 Cadillac automobile and had previously been arrested for disorderly conduct. All of these witnesses were called by the Commission and in view of their admissions on cross examination we cannot agree with plaintiff's contention that he was precluded from impeaching witnesses who were testifying against him.
 3 The plaintiff further argues that he was not permitted to present impeachment evidence to the effect that there was a conspiracy among a group of negroes for the purpose of getting the plaintiff's job. We cannot agree with the plaintiff because two individuals who testified *868 on his behalf were permitted to testify on direct examination that Mike Young and friends of his had made statements that they were going to "get officer Davenport." It is true that plaintiffs witness, Officer William A. Hill, was prevented from testifying as to the activities of Mike Young when an objection was made to such a line of questioning. The Commission sustained the objection and made the statement that "Mr. Young testified he had been arrested on several occasions and that satisfies the record." We concur in the Commission's ruling, in that the record was already replete with the arrest records of Mike Young and other Commission witnesses and no useful purpose would be served by permitting repetitious testimony.
 4, 5 The witnesses who were called by the Commission and testified against the plaintiff cannot be classed as desirable citizens, yet the Board after evaluating all testimony rendered a decision that the plaintiff should be discharged from the City of Peoria Police Department. The decision of the Board should not be reversed by a reviewing court unless the opposite conclusion is clearly evident and the reviewing court determines only whether there is any evidence which fairly tends to support the Board's decision. (Etscheid v. Police Board of City of Chicago, 47 Ill. App.2d 124, 197 N.E.2d 484.) In reviewing findings of administrative agency, courts can only set aside findings if it is against the manifest weight of the evidence and may not review the evidence or make independent determination of facts. Kelley v. Civil Service Commission, 31 Ill. App.2d 115, 175 N.E.2d 630.
 6, 7 Examining the record and applying these rules to the testimony adduced during the hearing before the Commission it is clear that the record establishes that the T.T. Club and its vicinity constituted a trouble area in the city of Peoria. The evidence also establishes without contradiction that the plaintiff, a police officer, while armed and off duty, stopped at the T.T. Club for personal reasons. The evidence fails to show that the plaintiff at any time attempted to solve any problem which he might have had with Mike Young by asking for assistance from the Peoria Police Department, nor did he resort to legal process, but instead he took it upon himself to solve any problem which he may have had by his own personal methods. There is ample evidence in the record to support the testimony of Mike Young that the plaintiff without provocation attacked him. The only contrary evidence received in regard to the attack was that given by the plaintiff who denied ever having caused Mike Young any bodily harm or ever having abused or assaulted him. It was the Commission, not the court of review, who had the duty and the right to determine the credibility of the witnesses appearing before it. (Davis v. Board of Fire and Police Commissioners of City of Peoria, 37 Ill. App.2d 158, *869 185 N.E.2d 281; Taylor v. Civil Service Commission of City of Chicago, 33 Ill. App.2d 48, 178 N.E.2d 200.) We therefore cannot conclude that the finding of the Commission is against the manifest weight of the evidence.
The plaintiff claims that the evidence presented did not support the finding that his continuation as an officer in the Police Department was detrimental to the service. Coupled with this contention the plaintiff argues that the Commission failed to show that his dismissal was a discharge for "cause" as defined by law. If the evidence received by the Commission establishes that there was "cause" for its action then we can assume ipso facto that the plaintiff's conduct was detrimental to the discipline and efficiency of the police service of the City of Peoria and his discharge was warranted.
 8, 9 The word "cause" is not defined by statute but our courts have construed it to be some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognizes as good cause for his no longer holding the position. (Coursey v. Board of Fire and Police Commissioners, 90 Ill. App.2d 31, 234 N.E.2d 339.) Further our courts have held that "cause" is to be defined and applied in the discretion of the Board and a court should not reverse unless the Board's findings are so unrelated to requirements of the service or are so trivial as to be unreasonable or arbitrary. (Davis v. Board of Fire and Police Commissioners, supra; Nolting v. Civil Service Commission of the City of Chicago, 7 Ill. App.2d 147, 129 N.E.2d 236.) Without again restating the facts in the instant case, which clearly support a finding that the plaintiff attempted to take the law into his own hands, we can only conclude that the findings of "cause" by the Commission are without question directly related to the requirements of the service and are not trivial or arbitrary. The City of Peoria is a metropolitan area and the problems confronting such a city are many. The Police Department is charged with the duty to enforce the Criminal Code and numerous city ordinances and such enforcement presents many difficulties to the Police Department. In order to surmount these difficulties and to fulfill the responsibilities placed upon such Police Department it is necessary that the department be staffed with well trained and organized personnel. Discipline is not only vital but absolutely essential to this force of armed men who protect the life and property of the citizens in the city. Discipline is not only necessary for the proper functioning of the department but in addition if discipline were absent the Department would lose the respect of the public and should this occur the Department would become incompetent and *870 demoralized. When we consider the magnitude of the importance of an efficient and well disciplined Police Department we cannot find the actions of the plaintiff in the instant case trivial or of minor import. See Nolting v. Civil Service Commission, supra.
 10-12 Lastly, the plaintiff contends that the Commission's consideration of his conduct while he was off duty makes him a second class citizen in that he has a right to not be "bullied" by a person such as Mike Young. The record is devoid of any evidence that the plaintiff was "bullied" by the said Mike Young, but on the contrary it clearly establishes the fact that the plaintiff was the aggressor. It has long been settled in our state that there is no distinction between "off duty" or "on duty" misconduct by a police officer. Should a police officer engage in misconduct which is detrimental to the service it would be absurd to say that he is clothed with a cloak of immunity if such misconduct occurred during "off duty" hours. By the very nature of his employment a police officer is in the eyes of the public and for the good of the department must exercise sound judgment and realize his responsibilities to the department and the public at all times. See Joyce v. City of Chicago, 216 Ill. 466, 75 N.E. 184.
For the reasons set forth we hereby affirm the judgment of the circuit court of Peoria County.
Judgment affirmed.
STOUDER, P.J., and DIXON, J., concur.