NATHANIEL BROWN, JR., Plaintiff-Appellant, *v.* SIDNEY SEXNER *et al.*,
Defendants-Appellees.

First District (1st Division)   No. 79-1153

Opinion filed May 5, 1980.

Donald T. Bertucci, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Rosalyn H. Kagan, Assistant State's Attorneys, of counsel), for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Nathaniel Brown, Jr., was discharged from his position as a captain of the Cook County Department of Corrections (Department) following a hearing before the Cook County Police and Corrections Merit Board (Board). Brown brought an administrative review action against defendants in the circuit court of Cook County. The circuit court reversed one of the Board's findings, but upheld Brown's discharge.

Brown appeals from the circuit court's order, contending that: (1) the Board lacked jurisdiction to reconsider its order dismissing the complaint against Brown; (2) the Board's decision was erroneously based on allegations of the complaint which were dismissed by the Sheriff of Cook County; (3) the Board's findings were not supported by the manifest weight of the evidence; (4) Brown's conduct was not sufficient cause for discharge; (5) the Board allowed improper and prejudicial rebuttal evidence; and (6) his prehearing suspension was illegal and unconstitutional.

The sheriff of Cook County brought a complaint against Brown alleging five violations: (1) that Brown committed the offense of battery against correctional officer Willie Beasley by punching and kicking Beasley without lawful justification, thereby causing Beasley's hospitalization; (2) that Brown violated (Ill. Rev. Stat. 1977, ch. 38, par. 12—3(a)) (criminal battery); (3) that Brown wilfully mistreated Beasley in violation of article VIII, section B, paragraph 3 of the Board Rules; (4) that Brown mistreated Beasley, a junior employee, in violation of article VIII, section B, paragraph 9; and (5) that Brown engaged in conduct unbecoming a Department employee which tended to reflect discredit on the Department in violation of article VIII, section B, paragraph 11.

On December 5, 1977, the Board granted plaintiff's motion to dismiss the complaint. On January 10, 1978, the Board vacated that order.

Willie Beasley, a Department correctional officer for over nine years, testified before the Board about an incident occurring on April 19, 1977. Beasley arrived at a tavern parking lot at about 9 a.m. He had just finished his shift and was in uniform. Beasley met Officers Brown, Anderson, Clay and Lockett. They sat in Lockett's car for 30 to 45 minutes, drinking whiskey, then left the car and continued conversing. Gradually everyone left the lot except Brown and Beasley. As the two men stood talking in the parking lot, Brown swung at Beasley, striking him in the face. When

Beasley tried to back away, he tripped and fell over a concrete divider. Brown kicked Beasley in the side while Beasley was on the ground. Beasley got up and continued to back away, but Brown continued to throw punches which Beasley was able to block. Beasley did not see anyone present during the fight; however, Officer Glover returned to break it up.

Beasley further testified that he suffered a fractured nose, split lip and sore side. The police were summoned to the scene and took Beasley to the hospital. Beasley subsequently underwent surgery for his nasal injuries.

On cross-examination, Beasley testified that Officers Brown, Lockett, Clay and Anderson were also off duty at the time of the incident. Captain Brown was not in uniform. Brown was Beasley's superior officer. Beasley maintained a good working relationship with Brown before the incident and believed that the relationship would remain good despite the altercation. Beasley recalled drinking a couple of shots and did not recall any argument with Brown before Brown hit him. He testified that Brown said he thought Beasley was his friend prior to striking him.

Walter Glover, a Department employee, testified that on April 19, 1977, at about 10:30 a.m., he left the Burger King and observed Brown and Beasley arguing. Glover saw that Beasley was bleeding and stepped between the men. He did not see Beasley strike Brown. Glover recalled Beasley saying to Brown, "I thought you were my friend."

Willard Sullivan, chief correctional officer for the Department, a 17-year Department employee and Brown's superior officer, testified that on April 19, 1977, at about 1 p.m., he (Sullivan) arrived at the Ninth District Chicago Police Station. He saw Captain Brown in the squad room and noticed Brown's appearance was disheveled, his eyes were bloodshot and he was loud and hostile. When the police attempted to read Brown his rights, he said, "Fuck that shit; these cuffs are too tight. Loosen these cuffs."

In Chief Sullivan's opinion, Captain Brown's behavior was disruptive to the efficiency of the Department. He elaborated that such conduct would affect the morale of other correctional officers and that lower ranking officers would have no defense against the use of physical force by their superiors.

Superintendent Robert Glotz testified that he had been a Department employee for 12 years and had been a captain for 2½ years. Glotz testified that a correctional captain should possess traits of leadership, self-discipline and self-control. In his opinion, if a captain were to strike a subordinate officer while off duty and without legal justification, such conduct would disrupt the efficiency of the Department. It would also undermine the superior officer's leadership abilities because he would lose

the respect of his men. Superintendent Glotz had no personal knowledge of any disruption of Department operation due to the April 19, 1977, incident.

Officer Russell Nelson testified on Brown's behalf. Nelson was assistant superintendent at the time of the incident. He received no complaints of morale problems as a result of the incident. Such complaints, however, could have been handled by junior officers.

Lieutenant Robert Kelly also testified that he did not detect any morale problems or disruption stemming from the April 19, 1977, incident, nor did he receive any complaints. The parties then stipulated that if 54 witnesses listed on Brown's amended answer to discovery testified, they would substantially corroborate Nelson's and Kelly's testimony.

Officer William Anderson testified that during the morning hours of April 19, 1977, he saw Brown and Beasley in the parking lot and overheard their conversation. Brown told Beasley not to drive and Beasley said he wanted to drive. Brown was holding Beasley's car keys and Beasley wanted them back. Brown declined. Anderson characterized the conversation as a debate and stated that Beasley was loud. Anderson left the lot accompanied by Officer Clay. On cross-examination, Anderson testified that Brown was his superior officer and friend.

Captain Brown testified in his own behalf that on the morning of April 19, 1977, he had a conversation with Beasley. Brown told Beasley that Beasley had enough to drink and should not drive. Beasley contended that he was O.K. and could drive. Brown stated that Officer Clay would take Beasley home. Brown had the keys to Beasley's auto and gave them to Clay. Clay later put the keys on top of an unidentified auto and left. At this point Brown retrieved the keys and, when Beasley tried to grab them, he pushed Brown. Brown pushed Beasley off him and Beasley fell, striking his face on the cement divider.

While no one was present during the altercation, several officers came upon the scene shortly thereafter. Brown denied kicking Beasley. He denied being intoxicated and stated he only drank one beer. Beasley filed a criminal charge of battery against Brown, but the charge was dismissed. According to Brown, Beasley was and still is his friend. Brown further testified that at the police station he complained because the handcuffs were cutting off his circulation. He also tried to explain the incident to the police officers.

Officer Bennie Clay testified that he overheard the conversation between Brown and Beasley. He heard Brown telling Beasley he wasn't capable of driving and Beasley insisting he could drive. Brown gave Clay Beasley's keys because he didn't think Beasley was able to drive. Clay

testified that Beasley was "a little loud." On cross-examination, Clay testified that he was a friend of Brown's and it was possible that he wanted to help Brown. Clay was also Beasley's friend.

On rebuttal, Officer Harold Gordon of the Chicago police department testified that he arrived at the scene of the incident and observed a group of Cook County sheriffs in uniform. One officer, subsequently identified as Beasley, was bleeding from the nose and crying. Gordon observed Brown and noticed that his eyes were bloodshot and watery, that he had a strong odor of alcohol on his breath and that he swayed while standing. Gordon also observed cuts on Brown's knuckles. In Gordon's opinion, Brown was intoxicated.

Gordon further testified that it required five police officers to restrain Brown and to handcuff him. When Gordon asked Brown what had happened, Brown replied that it was none of his business. Brown shouted, "You can't arrest me, I'm a police officer too." At the police station, Gordon observed Brown struggling with an officer in the interview room. When Brown was told he was going to the lockup, he yelled, "If you [don't] take off these handcuffs, I am going to do the same thing to you as I did to the other officer." Brown also refused to show any identification and then fell asleep on a table.

When Gordon asked Beasley what happened, Beasley replied that he had been drinking with Brown for a few hours and that Brown punched him in the face for no reason. Gordon testified that he could tell Beasley was drinking, but could not give an opinion as to his sobriety.

Dr. John Patterson testified as to treatment he gave Beasley immediately after the incident. Beasley told him that he had been in a fight, that he had been punched in the nose and kicked in the ribs. Dr. Patterson believed that the nasal bleeding indicated "acute trauma to the nose, probably from being hit." Additionally, Beasley's front teeth were loose and he complained of pain in his right side. Dr. Patterson did not notice alcohol on Beasley's breath.

Finally, Beasley testified on rebuttal that he left his car keys in the vehicle. He gave them to no one, but didn't know if they were taken from his car. He stated that no one offered him a ride home.

Based on this evidence, the Board entered its order of dismissal and findings. The Board noted that the rank of correctional captain involves duties and responsibilities to the public and Department inmates and requires alertness, good mental condition and "a maturity in judgment so as to be able to perform in moments of stress to protect the public and inmates." Findings of fact were entered that Brown violated each of the five allegations of the complaint.

Brown brought an administrative review action in the circuit court of Cook County contesting his discharge. On March 7, 1979, that court

entered an order (1) finding the oral pronouncement made by the Board on December 5, 1977, was not a final and appealable order; (2) striking and reversing those findings of the Board referring to alleged violations of the Illinois Criminal Code; (3) finding that all other findings are supported by the manifest weight of the evidence and affirming them; and (4) finding that Brown's due process rights were not violated.

Plaintiff first contends that the Board lacked jurisdiction to reconsider its order dismissing the complaint against him. The record disclosed that on December 5, 1977, the Board granted plaintiff's motion to dismiss the complaint. On January 10, 1978, the Board granted the State's Attorney's motion for reconsideration and vacated the order of dismissal entered on December 5, 1977. Both the December 5, 1977, and January 10, 1978, rulings were oral pronouncements for the record. Chairman Garbutt also stated for the record that the Board overturned its initial ruling to correct its own error:

> "Mr. Bertucci, very frankly I was in error. The complaint sets out the allegations under our rules, and very frankly after that meeting I went back to my office and I did a little research on my own. And if I could have reconvened everybody that evening, it would have been vacated."

Plaintiff argues that once the Board has uttered its ruling for the record this is a final, appealable order, and it is precluded from listening to additional arguments, evidence or correcting its errors. Plaintiff further contends that the only procedure for challenging the Board's December 5 order was to appeal that order pursuant to the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) and that the Board lacked jurisdiction to reconsider its order. We do not agree.

The issue of what constitutes a final administrative decision was specifically addressed in *Forberg v. Board of Fire and Police Commissioners of the City of Markham* (1976), 40 Ill. App. 3d 410, 352 N.E.2d 338. Following a hearing before the Board, Forberg was notified by a letter dated March 17, 1974, that he was to be discharged from his employment. On March 20, 1974, the Board issued a document entitled "Findings and Decision of the Board." Forberg argued that the March 17 letter amounted to a final administrative decision because it performed the ultimate act of discharge and affected Forberg's legal rights. He further contended the letter was insufficient because it lacked findings of fact. The appellate court held that the Board's decision was not final until it issued its written order, stating (40 Ill. App. 3d, 410, 412):

> "In the instant case, we believe the 'Findings and Decision of the Board' issued on March 20, 1974, constituted its final administrative decision. Although the letter of March 17, 1974, did affect plaintiff's

legal rights, it did not terminate the proceedings of the agency as required by the Administrative Review Act. * * * The Board did not terminate its proceedings when the letter was written, but rather promptly compiled a decision supported by findings of fact * * *."

■■ Similarly, we believe that the Board's oral pronouncements did not constitute a final administrative decision because there was no final appealable decision until a written order with findings was served on the parties. It is well established in Illinois that "administrative decisions must be accompanied by findings of fact so that the basis for the decision can be determined and the decision judicially reviewed." *Forberg v. Board of Fire & Police Commissioners* (1976), 40 Ill. App. 3d 410, 412, 352 N.E.2d 338; see also *Reinhardt v. Board of Education* (1975), 61 Ill. 2d 101, 329 N.E.2d 218; *Melrose Park National Bank v. Zoning Board of Appeals* (1979), 79 Ill. App. 3d 56, 398 N.E.2d 252.

Moreover, section 4 of the Administrative Review Act supports the necessity for a written order (Ill. Rev. Stat. 1977, ch. 110, par. 267):

"Every action to review a final administrative decision shall be commenced * * * within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected thereby."

Accordingly, no final and appealable order was issued by the Board until its written findings were served upon plaintiff. Before this time the Board retained jurisdiction to reconsider orders entered and to correct its errors.

Brown's second contention is that the Board's decision was erroneously based on allegations dismissed by the sheriff of Cook County. The Board found, among other things, that Brown committed the offense of battery upon Beasley and violated section 12—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 12—3(a)) (criminal battery). However, on December 5, 1977, prior to the commencement of the hearing, the sheriff's counsel voluntarily dismissed paragraph two of the complaint, which alleged Brown committed criminal battery. Dismissal of this portion of the complaint was necessary because of the dismissal of all criminal charges against Brown. Paragraph one, dealing with civil (tort) battery, was not dismissed.

The Board's error with respect to criminal battery was rectified by the circuit court because it reversed findings of the Board referring to the alleged violations of the Illinois Criminal Code. The court determined that the other charges had been proved and upheld Brown's discharge. Accordingly, we need not consider the Board's finding on criminal battery in our disposition.

Brown's third contention is that the Board's findings are against the manifest weight of the evidence. Agency findings of fact are held to be

prima facie true and correct. (Ill. Rev. Stat. 1977, ch. 110, par. 274.) In order to conclude that findings are contrary to the manifest weight of the evidence, a reviewing court must be satisfied that an opposite conclusion is clearly evident. (*Kelly v. Police Board of the City of Chicago* (1975), 25 Ill. App. 3d 559, 323 N.E.2d 624.) Additionally, a reviewing court may not substitute its judgment as to witness credibility for that of the agency. *Res v. Civil Service Com.* (1977), 49 Ill. App. 3d 852, 365 N.E.2d 209.

This case rested upon the determination of Brown's and Beasley's credibility. Beasley testified that Brown punched him without provocation, causing him to fall over a concrete divider. Brown then kicked Beasley in the side while Beasley was on the ground and attempted to throw more punches when Beasley got up. According to Brown, Beasley was intoxicated and they argued about whether Beasley should drive. When Beasley pushed Brown trying to retrieve his car keys, Brown pushed Beasley causing his fall over the cement divider. Brown denied punching or kicking Beasley. No one else witnessed the altercation.

■■ Even if the Board found that the testimony of Brown's other witnesses was credible, this only established that Brown and Beasley were engaged in an argument about Beasley's ability to drive. Brown's witnesses neither corroborated Brown's claims of provocation and justification nor negated Beasley's account of Brown's unprovoked attack upon him. Accordingly, the focal point of the Board's findings was their determination as to the credibility of Brown's and Beasley's conflicting accounts of the incident. We will not disturb on appeal their findings which stem from this determination of credibility.

■ Brown's fourth contention is that the Board's findings do not constitute cause for discharge. We disagree. Cause has been judicially defined as some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position. (*Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389, *aff'd & remanded* (1977), 69 Ill. 2d 27, 370 N.E.2d 511.) Because there is no statutory definition of cause, whether a charge is sufficient cause for discharge is generally for the agency to determine. (*Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 340 N.E.2d 560.) A police board has considerable latitude in determining what constitutes cause for discharge and its decision will not be reversed unless its finding is unrelated to the requirements of the service or so trivial as to be unreasonable. *Crowell v. Police Board* (1975), 32 Ill. App. 3d 552, 336 N.E.2d 573.

Brown was charged with violating the following Board Rules and Regulations (art. VIII):

"B.  No police officer of the Cook County Police Department or any employee of the Department of Corrections shall:

       \* \* \*

3. Willfully mistreat any person;
       \* \* \*

9. Mistreat a junior employee of the Department;
       \* \* \*

11.  Engage in any conduct unbecoming to an employee of the Department or which tends to reflect discredit on the Department;
       \* \* \* "

■ Reviewing courts must be guided by the construction agencies supply their rules (*Olin Corp. v. Pollution Control Board* (1977), 54 Ill. App. 3d 480, 370 N.E.2d 3), and should not substitute their judgment for an agency rule interpretation unless it is unreasonable. *Taylor v. Police Board* (1978), 62 Ill. App. 3d 486, 378 N.E.2d 1160.

Brown contends that his discharge cannot be upheld because the alleged misconduct occurred while he was off duty, did not impair the operation or efficiency of the Department or affect his ability to perform his duties as a correctional captain.

■ Initially, we note that off-duty conduct of law enforcement officers is subject to reasonable regulation and can serve as cause for discharge. (See, *e.g., Kammerer v. Board of Fire & Police Commissioners* (1970), 44 Ill. 2d 500, 256 N.E.2d 12; *Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d 864, 278 N.E.2d 212.) At issue then is the nexus between Brown's off-duty misconduct and service discipline and efficiency requirements.

Superintendent Glotz testified that the character traits necessary for a correctional captain included leadership, discipline and self-control and that a captain must also be a responsible person who commands the respect of subordinates. Glotz was of the opinion that if a hypothetical correctional captain were to strike a subordinate while off duty, such misconduct would disrupt the efficiency of the service, undermine the captain's leadership abilities and cause him to lose respect.

Brown attempted to contradict Glotz's opinions by the testimony of Officers Nelson and Kelly, who testified that they had neither detected morale problems nor received complaints stemming from the incident. It was stipulated that 54 additional witnesses would offer corroborating testimony.

■ We need not attempt to resolve this conflicting evidence as to the hypothetical, perceived and actual effects of Brown's misconduct upon the Department. Rather, we are justified in deferring to the Board's

expertise in the internal regulation of peace officer affairs. The need for a well-trained and disciplined staff of peace officers was expressed in *Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d, 864, 278 N.E.2d 212, a case involving the striking of an individual by an armed off-duty police officer. The court there stated (2 Ill. App. 3d 864, 869-70):

> "[I]t is necessary that the department be staffed with well trained and organized personnel. Discipline is not only vital but absolutely essential to this force of armed men who protect the life and property of the citizens in the city. Discipline is not only necessary for the proper functioning of the department but in addition if discipline were absent the Department would lose the respect of the public and should this occur the Department would become incompetent and demoralized. When we consider the magnitude of the importance of an efficient and well disciplined Police Department we cannot find the actions of the plaintiff in the instant case trivial or of minor import."

See also *Nolting v. Civil Service Com.* (1955), 7 Ill. App. 2d 147, 160, 129 N.E.2d 236.

Brown's fifth contention is that the Board erred in admitting rebuttal evidence. After Brown rested his defense, the sheriff was allowed to call three rebuttal witnesses: Officer Gordon, Dr. Patterson and Officer Beasley. Brown made timely objections and argued that their testimony raised new matters that should have been elicited during the sheriff's case-in-chief. The Board overruled these objections. Defendants maintain that the Board properly exercised its discretion in allowing rebuttal evidence to refute Brown's testimony that he only had one beer prior to the altercation.

Rebuttal evidence is that which answers, explains, repels, contradicts, or disproves evidence introduced by the defendant. (*People v. King* (1978), 61 Ill. App. 3d 49, 377 N.E.2d 856; *Harp v. Illinois Central Gulf R.R. Co.* (1977), 55 Ill. App. 3d 822, 370 N.E.2d 826.) Rebuttal evidence must address a material issue and not collateral matters. (*People v. Allen* (1975), 27 Ill. App. 3d 1054, 327 N.E.2d 387.) The fact that testimony might also be admissible in chief does not render it improper for rebuttal (*People v. Carbona* (1975), 27 Ill. App. 3d 988, 327 N.E.2d 546, *cert. denied* (1976), 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114), and the trial court may in its discretion allow rebuttal which should have been offered in chief. (*People v. Pelegri* (1968), 39 Ill. 2d 568, 237 N.E.2d 453.) A reviewing court will not interfere unless an abuse of discretion is shown. *People v. King.*

Brown neither alleges nor demonstrates that the Board abused its discretion. Rather, he contends that the Board allowed the introduction of

new matter which should have been introduced in the sheriff's case-in-chief. However, where the appellant does not claim an abuse of discretion, the claim of error in the admission of evidence more properly considered in chief cannot be considered. *Department of Public Works & Buildings v. Chicago Title & Trust Co.* (1950), 408 Ill. 41, 53, 95 N.E.2d 903; *Harp v. Illinois Central Gulf R.R. Co.*

■■ In any event, we do not believe the Board abused its discretion. Review of the record indicates that the rebuttal evidence concerned the material issue of whether Brown was intoxicated at the time of the altercation. Brown had testified that he only had one beer prior to the altercation. His credibility was properly attacked via contradictory rebuttal testimony. Additionally, Brown's public intoxication was undoubtedly a factor the Board wished to consider as relevant to the charge of conduct unbecoming a Department officer.

Finally, Brown asserts that Officer Gordon's rebuttal testimony pertained to Brown's conduct during and after his arrest and that this conduct was never alleged in the sheriff's complaint. We believe that the Board considered Brown's misconduct during and after his arrest for the limited purpose of evidence of his intoxication at the time of the altercation. The Board's findings of fact mirrored the administrative charges and did not indicate Brown's alleged misconduct before the Chicago police department was a cause of his discharge.

■■ In any event, charges in agency proceedings need not be drawn with the same precision as judicial pleadings, but need only be sufficiently clear and specific as to allow the preparation of a defense. (*Carrao v. Board of Education* (1977), 46 Ill. App. 3d 33, 360 N.E.2d 536.) Brown's misconduct at the station satisfies this standard, since it falls under the charge of conduct unbecoming to a Department employee which tends to reflect discredit on the Department.

Finally, Brown appeals the denial of his motion for reinstatement and back pay and argues that his suspension from October 14, 1977, until his discharge on June 14, 1978, violated his due process rights. Brown's argument is threefold: (1) the Board was not authorized to promulgate a rule allowing suspension pending discharge; (2) his indefinite period of suspension violated section 12 of the County Police Department Act (Ill. Rev. Stat. 1977, ch. 125, par. 112), which only permits suspension for a period of 30 days; and (3) this indefinite suspension deprived him of liberty and property without due process of law guaranteed by the United States and Illinois constitutions. (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.) Defendants maintain that Brown's actions were a major contributing factor to the delay in this cause.

We find that Brown's due process right to a prompt hearing was adequately safeguarded.

On April 20, 1977, Brown was suspended pending discharge. On May 11, 1977, written charges against him were filed with the Board. His case was first called before the Board on June 6, 1977. Brown stated that he was represented by counsel; however, no attorney appeared on his behalf. No demand for a hearing prior to this date is indicated in the record. Brown appeared without counsel on other scheduled hearing dates (September 20, 1977; October 11, 1977). Again, no hearing demand was filed by Brown. Finally, on October 25, 1977, Brown's attorney, Mr. Bertucci, first appeared before the Board. At that time the parties agreed to argue Brown's motion for reinstatement and back pay (which had been filed on October 14, 1977) on November 9, 1977. The motion was taken under advisement and denied on December 12, 1977.

■■ Under this chronology, we believe the Board's denial of the motion was appropriate. This matter was called for a hearing on June 6, 1977, less than two months after Brown was suspended. Brown made no demand for a speedier hearing; rather, he contributed to delaying the matter because of his failure to secure the attendance of counsel. When counsel finally appeared before the Board on Brown's behalf, it was for the purpose of contesting the delay Brown had occasioned. Delay so occasioned cannot be relied on as error. See *People v. Johnson* (1973), 15 Ill. App. 3d 680, 304 N.E.2d 688.

After the denial of Brown's motion for reinstatement and back pay, he filed other prehearing motions which substantially contributed to the delay in initiating a hearing. The hearing commenced on January 31, 1978, terminated on April 24, 1978, and the Board released its decision on June 14, 1978. It is only with regard to this 5½-month delay after the hearing commenced that Brown's actions did not substantially contribute. Accordingly, the issue of a prompt disposition once a hearing is initiated must be considered separately from the issue of a prompt initiation of a hearing. As to the prompt disposition issue, we are guided by the reasoning in *Wright v. Califano* (7th Cir. 1978), 587 F.2d 345. In that case, the court, after citing *F.T.C. v. J. Weingarten, Inc.* (5th Cir. 1964), 336 F.2d 687, 691-92, *cert. denied* (1965), 380 U.S. 908, 13 L. Ed. 2d 796, 85 S. Ct. 890, to show that there must be "proof of the normal time necessary to dispose of a similar proceeding or of facts tending to show a dilatory attitude on the part of the Commission or its staff" stated (587 F.2d 345, 352):

> "* * * We believe that it would be an extremely rare case where a district court would be justified in intervening in the administrative process because of delays of this sort, absent a violation of the Due Process Clause. * * *."

■■ We do not believe that the mere passage of time here amounts to a due process violation. Brown has failed to demonstrate a dilatory attitude

by the Board or that swifter adjudication and disposition of this matter was reasonable, practical and customary.

Finally, we address the issue of the legality of Brown's suspension under Illinois law. Brown asserts that the Board is authorized by statute to suspend him no more than 30 days and that his indefinite suspension pending discharge was illegal. He further asserts that the Board lacked statutory authority to promulgate a rule allowing suspension greater than 30 days pending discharge.

The Board derives its rule-making authority from section 6 of "An Act in relation to the Cook County Police and Corrections Merit Board (Ill. Rev. Stat. 1977, ch. 125, par. 56), which provides:

> "Pursuant to recognized merit principles of public employment, the Board shall formulate, adopt, and put into effect rules, regulations and procedures for its operations and the transaction of its business. * * *"

Article II, sections A(1) and (2) of the Board Rules and Regulations state:

> "1. The Sheriff or his designated representative, without filing charges with the Board, may suspend, for any reasonable period not to exceed thirty days, any Police Officer of the Cook County Police Department or any employee of the Department of Corrections for infractions of the Rules and Regulations.
>
> 2. The Sheriff or his designated representative, may suspend any Police Officer of the Cook County Police Department or any employee of the Department of Corrections provided charges against that employee have been filed with the Board and pending the decision of the Board on those charges."

There are similar provisions in sections 12 and 13 of the County Police Department Act. Ill. Rev. Stat. 1977, ch. 125, pars. 112, 113.

Administrative agency rules promulgated pursuant to legislative authority have the force and effect of statutes and, like statutes, they enjoy a presumption of validity. (*Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 387 N.E.2d 320, *cert. denied* (1979), ___ U.S. ___, 62 L. Ed. 2d 57, 100 S. Ct. 87; *Du-Mont Ventilating Co. v. Department of Revenue* (1977), 52 Ill. App. 3d 59, 367 N.E.2d 532.) Moreover, an agency has the authority to promulgate guidelines constituting its attempt to construe provisions of statutory authority, subject to judicial review as to the proper exercise of such authority. *People ex rel. Petersen v. Turner Co.* (1976), 37 Ill. App. 3d 450, 346 N.E.2d 102.

■■ In our opinion, the Board's rules differentiating between suspension not to exceed 30 days (Rule 1) and suspension pending discharge (Rule 2) are neither unreasonable, violative of its rule-making authority nor

inconsistent with sections 12 and 13 of the County Police Department Act. Adoption of a rule authorizing suspension pending discharge is a reasonable and proper exercise of the Board's rule-making authority. Investigation of serious charges and preparation of the case prior to a hearing can be expected to take more than 30 days in many cases. We do not believe that the Board was restricted to a choice between inadequate case preparation or reassigning a suspect to active duty. The reasonableness of the rule is also evidenced by the fact that suspension pending discharge is allowed in Civil Service Commission hearings. Ill. Rev. Stat. 1977, ch. 127, par. 63b111.

For all of the aforementioned reasons, we find Brown's suspension and discharge were proper and affirm the order of the circuit court of Cook County.

Affirmed.

GOLDBERG, P. J., and CAMPBELL, J., concur.