JOHN MAGETT, JR., Plaintiff-Appellee, v. COOK COUNTY SHERIFF'S MERIT BOARD *et al.*, Defendants-Appellants.

First District (2nd Division)  No. 1—95—2702

Opinion filed July 2, 1996.

Jack O'Malley, State's Attorney, of Chicago (Patricia Shymanski, John J. Murphy, and Ina R. Silvergleid, Assistant State's Attorneys, of counsel), for appellants.

Lesley A. Redman and Kenneth N. Flaxman, both of Law Offices of Kenneth N. Flaxman, P.C., of Chicago, for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff John Magett, Jr., was employed as a Cook County corrections officer. On January 25, 1995, following an administrative hearing, he was discharged by the Cook County Sheriff's Merit Board (the Board). On administrative review, the circuit court reversed the decision of the Board, finding that it was against the manifest weight of the evidence. Because we determine that the Board's decision was not against the manifest weight of the evidence, we reverse the judgment of the circuit court. We remand, however, for a hearing to determine whether plaintiff's due process rights may have been violated by an unreasonable delay in the disposition of his case by the Board.

Prior to the initiation of termination proceedings by the sheriff of Cook County (the Sheriff), plaintiff was charged with the criminal offense of mob action in connection with the incident that ultimately led to his discharge. Plaintiff was jointly tried with Brian Frazier, who was charged with mob action, and Tyrone Sanders, who was charged with mob action, attempted murder, aggravated battery, and aggravated battery with a firearm.

At the trial for the criminal offenses, Irving Bell, a Cook County corrections officer, testified that on October 23, 1990, at approximately 3 a.m., he and five others were hanging campaign signs for Michael Sheehan, who was running for sheriff of Cook County. As they were

hanging signs in front of the Surf Lounge on Halsted Street, plaintiff exited the bar and told him to "get those fucking signs out of here." Plaintiff pulled out a gun and a badge and waved towards the bar. Approximately 30 men exited the bar, and plaintiff stated "kill him." After Bell was hit in the face with a brick and a bottle, he hit somebody, then ran towards the van that had brought him there. He was shot three times in the back and the van sped off, leaving him there. He denied being armed with a crowbar, hitting anybody with one, and telling police officers that he had struck somebody with one.

Richard Dunbar, a Cook County deputy sheriff, testified that he was among those hanging signs with Bell when plaintiff exited the bar, pulled out a gun and a badge, waved towards a group of people, and pointed towards Bell and said "kill him." He identified Frazier as the man who shot Bell. Many bottles and bricks were thrown at Bell and the others.

Timothy Gorniak, a Cook County corrections officer, and John Sheridan, a Cook County deputy sheriff, both part of the group that accompanied Bell and Dunbar, corroborated their testimony.

Detective Robert Lane testified that Sanders made a handwritten statement concerning his participation in the October 23 incident. In it, Sanders said that after he was hit in the head with a crowbar by Bell, he went back into the bar, returned with a gun, and fired it at Bell.

Plaintiff testified that he was sitting in a car in front of the Surf Lounge with Regina Morgan when some people began taking down Sheriff O'Grady's campaign signs. When he told the men, "[I]t's enough room on that pole for any candidate's sign," they responded, "[F]uck you, black motherfucker." As plaintiff exited the car, five or six people came out of the lounge and joined five or six other people who had been on the street shooting craps. There was an altercation in the street with a "lot of cussing and going on." Plaintiff's involvement was limited to "cursing" only. He denied threatening to kill anyone or motioning for anyone to come out of the bar. He pulled his gun and star when one of the men "came out with his pistol from out of his side." He was trying to break up the fight when shots were fired.

Regina Morgan testified that she left the Surf Lounge with plaintiff and they got into his car, which was parked in front of the bar. She saw a group of men taking down Sheriff O'Grady's campaign signs. She and plaintiff got out of the car and told the men "that there [was] enough room on that pole for any candidate." An "excited, angry" confrontation ensued and approximately five to seven people exited the Surf Lounge. A man hit Sanders in the head

with a crowbar. She entered the Surf Lounge and heard gunshots, but did not see who fired them. Plaintiff never waved his hands, motioned to anybody to join him, or took anything out of his pockets. Morgan denied that rocks and bottles were being thrown.

Leon Wilburn testified that plaintiff "showed a badge like he was trying to stop all the roughness to show that he was a peace officer."

Clarence Erby testified that plaintiff told the men that "it wasn't necessary" and that there was "room enough on the pole for both candidates' signs."

Julius Wilson testified that although plaintiff pulled a gun and told the men that he was a peace officer, he neither waved toward the bar nor said "kill him."

The parties stipulated that if Detective Lane were to be recalled, he would testify that Bell told him that he had struck a man with a crowbar.

In the criminal trial, the circuit court found plaintiff, Sanders, and Frazier not guilty.

On September 28, 1992, after plaintiff's acquittal, the Sheriff initiated proceedings to terminate his employment. The complaint alleged, *inter alia*, that plaintiff violated Cook County Department of Corrections General Orders requiring that a weapon carried off duty be registered with the Department of Corrections, prohibiting misconduct that impairs an employee's ability to do his job or adversely affects or involves the Department of Corrections, carrying a firearm off duty when there is a likelihood that alcohol will be consumed, and engaging in secondary employment. Cook County Department of Corrections General Orders ch. 3.14, §§ III.B.1.d, III.B.3, ch. 4.1, § III, ch. 3.17, § III.

On June 14, 1993, the Board held an administrative hearing in plaintiff's case. In addition to introducing the transcript from plaintiff's criminal prosecution, the Sheriff called Robert Bishop, deputy chief of internal affairs for the Cook County Department of Corrections, who testified that plaintiff was not authorized to carry a firearm while on or off duty.

Plaintiff denied doing anything to cause anyone to commit a criminal act or using force against anyone. His gun was registered at city hall, but not with the Department of Corrections. Sanders testified that plaintiff did nothing to cause Bell to strike him (Sanders) or to cause him (Sanders) to shoot Bell.

On January 24, 1995, approximately 18 months after the administrative hearing, the Board, with the hearing officer dissenting, ordered plaintiff terminated. Plaintiff filed a complaint for administrative review and the circuit court reversed, finding that the

Board's findings were against the manifest weight of the evidence. Defendants appeal, contending that the circuit court erred in reversing the Board's decision.

## ADMINISTRATIVE REVIEW

An administrative agency's findings of fact "shall be held to be prima facie true and correct" upon review. 735 ILCS 5/3—110 (West 1992). An agency decision will not be disturbed unless it is against the manifest weight of the evidence. *Launius v. Board of Fire & Police Commissioners*, 151 Ill. 2d 419, 427, 603 N.E.2d 477 (1992). An agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992). The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings; if the record contains any evidence to support the agency's decision, it should be affirmed. *Abrahamson*, 153 Ill. 2d at 88.

Here, the record contains ample evidence to support the Board's decision that plaintiff violated three sections of the Cook County Department of Corrections General Orders.

■ Chapter 3.14, *inter alia*, prohibits the carrying of a firearm while an officer is off duty when there is a likelihood that alcohol will be consumed and requires that a weapon carried while an officer is off duty must be registered with the Department of Corrections. Cook County Department of Corrections General Orders ch. 3.14, §§ III.B.3, B.1.d. The evidence showed that plaintiff was carrying a weapon at the Surf Lounge, where liquor was sold, on October 23, 1990, and that the weapon was not registered with the Department of Corrections. Accordingly, it was not against the manifest weight of the evidence for the Board to determine that plaintiff violated the relevant sections of chapter 3.14.

■ As for plaintiff's role in the October 23 altercation, the circuit court impermissibly reweighed the evidence in reaching its determination that plaintiff did not violate chapter 4.1, section III, which prohibits an officer from engaging in conduct that impairs his ability to do his job or adversely affects or involves the Department of Corrections. Cook County Department of Corrections General Orders ch. 4.1, § III. The Board found that plaintiff violated that order "by his general conduct and handling of [the] mob situation." The testimony of Bell, Dunbar, Gorniak, and Sheridan was consistent: it showed that plaintiff pulled out a gun and a badge, waved toward the Surf Lounge and encouraged others to come out, and when they did, he

told them to kill Bell. Thus, although plaintiff produced evidence that indicated he was a peacemaker, not an instigator, it was not against the manifest weight of the evidence for the Board to rely on the testimony of Bell, Dunbar, Gorniak, and Sheridan in reaching its decision that plaintiff, in engaging in "conduct unbecoming an officer," violated chapter 4.1, section III.

That plaintiff was acquitted of the criminal charge does not affect our determination. Not only does an administrative proceeding have a lower standard of proof than does a criminal trial (*Grames v. Illinois State Police*, 254 Ill. App. 3d 191, 204, 625 N.E.2d 945 (1993)), but, at the administrative hearing, plaintiff was neither charged with mob action nor discharged for such action; rather, he was discharged for his behavior during the occurrence. Accordingly, because the decision of the Board was not against the manifest weight of the evidence, the judgment of the circuit court reversing the Board's decision on that ground is reversed.

## ADEQUACY OF APPEAL

■ We reject defendants' contention that plaintiff appealed only a portion of the decision of the Board when he filed his complaint for administrative review in the circuit court. Because that complaint did not specify that plaintiff was appealing only a portion of the Board's decision, but requested that the circuit court "reverse the decision of the Merit Board," plaintiff sufficiently objected to the entire decision.

## SUFFICIENCY OF THE CONSIDERATION OF THE EVIDENCE

■ Plaintiff asserts that the members of the Board who ordered his discharge failed to consider the evidence because the order contains no language that they did so. None of the cases relied upon by plaintiff, however, stands for the proposition that an agency's termination order must contain words to the effect that the agency has "heard the evidence." See *Jones v. Jones*, 48 Ill. App. 2d 232, 198 N.E.2d 195 (1964); *Smith v. Smith*, 36 Ill. App. 2d 55, 183 N.E.2d 559 (1962); *People v. Ethridge*, 78 Ill. App. 2d 299, 223 N.E.2d 437 (1966). Accordingly, in the absence of proof that the Board did not consider the evidence, plaintiff's argument fails.

## SUFFICIENCY OF DISCHARGE GROUNDS

■ Plaintiff maintains that because the Board ordered his discharge based on his "conduct and handling of Mob situation," it impermissibly ordered his discharge on a ground not charged in the complaint, which charged that he "committed the offense of Mob Ac-

tion." Because the complaint sufficiently advised plaintiff of the nature of the charges against him and because the evidence relevant to the charge in the complaint and the charge in the order of discharge was comparable, we conclude that the order of discharge and the complaint were sufficiently consistent. See *Nelmark v. Board of Fire & Police Commissioners,* 159 Ill. App. 3d 751, 512 N.E.2d 1021 (1987) (although charge in administrative proceeding must be sufficiently clear and specific to allow preparation of a defense, it need not be drawn with precision required in judicial actions).

## DELAY IN DISPOSITION—THE DUE PROCESS CLAIM

Plaintiff contends that the Board lost jurisdiction because of the 18-month delay between the administrative hearing and the release of the Board's final decision. Although plaintiff has not so framed it, at issue here is whether his due process rights were violated by an unreasonable delay in the disposition of his case, following the initiation of his hearing. Plaintiff does not complain that his right to a prompt hearing was violated.

We note that defendants have not responded to this argument, contending, without citation to authority, that "there is no justification for advancing legal arguments previously made and rejected by the circuit court." Defendants ignore well-settled law that a reviewing court is "not bound to accept the reasons given by a circuit court for its judgment and the judgment may be sustained upon any ground warranted, regardless of whether the circuit court relied upon such ground and regardless of whether the reason given by the circuit court was correct." *Messenger v. Edgar,* 157 Ill. 2d 162, 177, 623 N.E.2d 310 (1993). Furthermore, although it was presented, plaintiff's claim of unreasonable delay was not rejected by the circuit court; the court simply relied on evidentiary grounds in reversing, without passing on the merits of the due process claim.

■ The due process clause of the fourteenth amendment provides that life, liberty, and property cannot be deprived without due process. U.S. Const., amend. XIV. " ' "[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' [Citation.] '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' [Citations.]" *Mathews v. Eldridge,* 424 U.S. 319, 334, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 902 (1976). At some point, a delay in adjudication will become a constitutional violation. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 547, 84 L. Ed. 2d 494, 507, 105 S. Ct. 1487, 1496 (1985).

■ "[C]onstitutional restraints on the timing, no less than the

form, of a hearing and decision 'will depend on appropriate accommodation of the competing interests involved.' " *Loudermill*, 470 U.S. at 557, 84 L. Ed. 2d at 513, 105 S. Ct. at 1501 (Brennan, J., concurring in part & dissenting in part), quoting *Goss v. Lopez*, 419 U.S. 565, 579, 42 L. Ed. 2d 725, 737, 95 S. Ct. 729, 738-39 (1975). In deciding whether termination procedures have violated an employee's constitutional rights, three factors are balanced: (1) the private interest that will be affected by official action; (2) the risk of an erroneous deprivation of that interest and the probable value, if any, of additional procedural safeguards; and (3) the governmental interest, including the function involved and the burdens that additional procedural safeguards would entail. *Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903.

■ As for the first *Mathews* factor, "the significance of the private interest in retaining employment cannot be gainsaid." *Loudermill*, 470 U.S. at 543, 84 L. Ed. 2d at 504, 105 S. Ct. at 1493. During the period in which an employee awaits a decision, he "is left in limbo, deprived of his livelihood and of wages on which he may well depend for basic sustenance." *Loudermill*, 470 U.S. at 549, 84 L. Ed. 2d at 508, 105 S. Ct. at 1497 (Marshall, J., concurring in part & concurring in the judgment). Even if paid during the pendency of administrative proceedings, an employee nevertheless has an interest in avoiding the "personal trauma experienced during the long months in which [he] awaits decision." *Loudermill*, 470 U.S. at 550, 84 L. Ed. 2d at 509, 105 S. Ct. at 1497 (Marshall, J., concurring in part & concurring in the judgment). Here, plaintiff alleged in his federal complaint, and the Board conceded at oral argument, that he was suspended without pay during the 18 months that he awaited a decision from the Board. If so, plaintiff had a strong interest in the prompt disposition of his case.

There is nothing in the record on appeal that would indicate that the second *Mathews* factor, the risk of erroneous deprivation, would have been affected by a swifter disposition of plaintiff's case.

Turning to the third *Mathews* factor, defendants in the instant case undoubtedly have a strong interest in the removal of an unsatisfactory employee, but the extent of the burden that would be imposed on the Board in requiring a more prompt disposition requires further factual development. Although Illinois courts have not expressly followed *Mathews* in prompt disposition cases, they have in effect emphasized this consideration, by requiring " ' "proof of the normal time necessary to dispose of a similar proceeding or of facts tending to show a dilatory attitude on the part of the [agency] or its staff." ' " *Gunia v. Cook County Sheriff's Merit Board*, 211 Ill. App. 3d 761, 769,

570 N.E.2d 653 (1991), quoting *Brown v. Sexner*, 85 Ill. App. 3d 139, 151, 405 N.E.2d 1082 (1980), quoting *Wright v. Califano*, 587 F.2d 345, 352 (7th Cir. 1978).

Here, plaintiff experienced an 18-month delay between the conclusion of his administrative hearing and the decision ordering his termination. He has alleged facts that circumstantially tend to show a dilatory attitude on the part of the Board: he claims that he repeatedly requested a decision, but it was only after filing suit in federal court that he received one. Moreover, he claims that the hearing officer promptly issued a preliminary recommendation that he not be terminated, but the Board ultimately disagreed. On the other hand, because the Board may have a reasonable explanation for the delay in issuing its decision, these facts alone may be insufficient to prove a due process violation. In any event, plaintiff should have an adequate opportunity to present proof that the delay in issuing a decision in his case was unreasonable.

The evidence plaintiff has so far presented in that regard—three cases that were decided in a far shorter time than was his—is insufficient to establish the normal time necessary to reach a decision. Nor has plaintiff presented evidence that the delay in his case was, in fact, unreasonable. Because the circuit court did not conduct a full evidentiary hearing into plaintiff's allegations, however, we find that remand is appropriate for their further development.

It is " 'an extremely rare case' " in which a court is justified in intervening in the administrative process. *Brown*, 85 Ill. App. 3d at 151, quoting *Wright*, 587 F.2d at 352. Thus, courts are generally reluctant to find a due process violation based on an unreasonable delay in issuing a decision following a hearing. *E.g., Gunia*, 211 Ill. App. 3d at 769 (no due process violation based on delay of 65 days between hearing and decision); *Brown*, 85 Ill. App. 3d at 151 (no violation based on delay of five months between hearing and decision); *Loudermill*, 470 U.S. at 546-47, 84 L. Ed. 2d at 506-07, 105 S. Ct. at 1495-96 (plaintiff failed to state a claim for due process violation where he alleged a delay of $6^{1}/_{2}$ months between hearing and decision). A due process violation determination based upon an unreasonable delay is not unprecedented in Illinois, however. In *Stull v. Department of Children & Family Services*, 239 Ill. App. 3d 325, 606 N.E.2d 786 (1993), for example, the court found that a 456-day appeal process was unreasonable and a violation of due process.

Also, we note that the Counties Code (55 ILCS 5/3—7001 *et seq.* (West 1992)) does not aid the inquiry here. Although that act requires a hearing before an employee is suspended or terminated, it does not provide either the time frame in which a hearing must be held or the

time frame in which a decision must be issued. See 55 ILCS 5/3—7012 (West 1992). In contrast, a number of states "have specified time limits for hearings and decisions on discharge appeals taken by tenured public employees, indicating legislative consensus that a month or two normally is sufficient time to resolve such actions." *Loudermill*, 470 U.S. at 555 n.3, 84 L. Ed. 2d at 512 n.3, 105 S. Ct. at 1500 n.3 (Brennan, J., concurring in part & dissenting in part).

In sum, although plaintiff's evidence presently is insufficient for us to find a violation of due process, because of the seriousness of his allegations and the failure of the circuit court to hold a hearing regarding them, we conclude that remand is appropriate for further development of the *Mathews* interests. Relevant to that inquiry is proof of the normal time necessary to dispose of a similar proceeding or of facts tending to show a dilatory attitude on the part of the Board and of the burden that would be placed on the Board by mandating a more rapid disposition of cases.

The judgment of the circuit court that the Board's decision was against the manifest weight of the evidence is reversed. We remand for further proceedings regarding plaintiff's allegations concerning the purportedly unreasonable delay in the disposition of his case. On remand, we direct the circuit court to hold a hearing in this matter within 60 days of the issuance of this mandate.

Reversed and remanded with directions.

HARTMAN, P.J., and BURKE, J., concur.