ANTHONY CALIENDO *et al.*, Plaintiffs-Appellants, v. LEROY MARTIN, Superintendent of Police, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—91—2741

Opinion filed July 30, 1993.

410

Richard S. Jolovec & Associates, Ltd., of Chicago (Donna Baffoe Mc-
Donald, of counsel), for appellants.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Bobbie McGee Gregg, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE COUSINS delivered the opinion of the court:

This appeal involves the review of an administrative determination made by the police board of the City of Chicago (the Board). On September 10, 1990, the Board determined that the plaintiffs, Anthony Caliendo (Caliendo) and Arthur Secor (Secor), were guilty of violating Chicago police department rules and ordered that Caliendo and Secor be discharged from their positions as police officers with the Chicago police department. The plaintiffs petitioned for administrative review in the circuit court on October 12, 1990. A hearing was held and on July 25, 1991, the circuit court affirmed the findings and decision of the Board.

Plaintiffs raise the following issues on appeal: (1) whether the Board's determination that plaintiffs violated police department rules by accepting bribes is against the manifest weight of the evidence; (2) whether the Board's decision to impose the sanction of discharge was unreasonable and arbitrary, or unrelated to the requirements of service; and (3) whether plaintiffs were deprived of any of their due process rights so as to render the decision of the Board fundamentally unfair.

We affirm.

BACKGROUND

On August 16, 1984, the superintendent of police filed charges against Caliendo and Secor for violating the following Chicago police department rules:

Rule 2: Any action or conduct which impedes the department's efforts to achieve its policy and goals or brings discredit upon the department.

Rule 3: Any conduct or action taken to use the official position for personal gain or influence.

Rule 21: Failure to report promptly to the department any information concerning any crime or other unlawful action.

Rule 48: Soliciting or accepting any gratuity, or soliciting or accepting a gift, present, reward or any other thing of value for any service rendered as a department member, or as a condition for the rendering of such service, or as a condition for not performing sworn duties.

The complaint indicated that Caliendo and Secor were accused of accepting bribes instead of issuing traffic citations on two separate occa-

sions during May of 1984. Commencing March 23, 1990, five days of hearings were held before a hearing officer on the charges against Caliendo and Secor.

### THE MAY 7, 1984, INCIDENT

Officer Brian Smith (Smith) of the Internal Affairs Division of the Chicago police department testified that on May 7, 1984, he was assigned to conduct an undercover investigation of Caliendo and Secor to determine whether they would accept or solicit a bribe in exchange for failing to issue a traffic citation. Smith testified that on May 7, he was driving an unmarked station wagon near the intersection of Clark and Fullerton when he spotted the plaintiffs in a marked patrol car. He deliberately made an illegal U-turn in front of Caliendo and Secor, and they signalled him to stop his car.

Smith got out of his car, and Secor stepped out of the patrol car. Secor told Smith that he had committed two traffic violations: making an illegal U-turn and failing to have a Chicago sticker on his car. Secor took Smith's driver's license and got back into the squad car.

Smith testified that he walked over to the squad car, leaned into the window, and had the following conversation with Secor:

"OFFICER SMITH: What can we do?

SECOR: Whatever you want to do.

OFFICER SMITH: Whatever you want to do is all right with me.

SECOR: Whatever you want to do just be discreet.

OFFICER SMITH: Would $20 be enough?

SECOR: Whatever. Just be discreet."

Smith testified that he then squatted down near the driver's door, inserted his arm through the window of the police car and dropped $20 into Secor's lap. The money was in plain view and neither Secor nor Caliendo rejected it. Instead, Secor returned Smith's license to him without issuing any traffic citations.

In his defense, Secor testified that he generally did not issue a traffic citation to every motorist he stopped for a traffic violation. He stated that out of approximately 150 motorists he stopped per month, he gave a pass to about 110 motorists. He also testified that he considered a U-turn to be a minor violation.

Secor testified that on May 7, he and Caliendo stopped Smith for making a U-turn. Caliendo did not get out of the squad car on this occasion or talk with Smith. Secor exited the squad car and engaged in a conversation with Smith, who explained that he was lost and asked for directions to the outer drive.

After Secor checked Smith's driver's license and found that everything appeared to be in order, he gave Smith directions and returned to his squad car. At that point Smith walked back to the squad car, stood next to it and said "I just want to really thank you for giving me directions. I really appreciated it." Secor responded by saying, "Well just be on your way and just be careful, you know watch your driving." At this point, Smith returned to his vehicle and drove away.

Secor testified that Smith did not kneel next to the squad car and did not reach his hand inside the car. Secor testified that Smith did not drop money into the car. Secor denied ever asking Smith for money and stated that he never found any money on the floor, seat, or anywhere in the car.

Caliendo testified that on May 7, 1984, he never talked with Smith and did not get out of the squad car. He testified that he never saw any money dropped into the car.

### THE MAY 18, 1984, INCIDENT

Officer Marion Williams (Williams) testified that on May 18, 1984, the Chicago police department assigned him to the undercover investigation of Secor and Caliendo. Williams testified that on the evening of May 18, he was driving an unmarked car and wearing a concealed tape recorder. He located the plaintiffs' patrol car near the intersection of Clark and Fullerton and made an illegal U-turn in front of Secor and Caliendo's squad car. Secor and Caliendo signalled for Williams to stop. As Williams got out of his car, Caliendo and Secor both emerged from the squad car. Secor briefly scanned Officer Williams' vehicle for danger and then returned to the squad car. After Caliendo informed Williams that he had made an improper U-turn, the following conversation ensued:

> "OFFICER WILLIAMS: I'm sorry. How about giving me a pass?
>
> CALIENDO: Let me see your driver's license. You're obstructing traffic.
>
> * * *
>
> CALIENDO: I could give you four tickets.
>
> OFFICER WILLIAMS: Please don't give me four tickets. Maybe we can take care of things out here. If you would, I would appreciate what you could do for me.
>
> CALIENDO: Okay, have a seat in the car and I will be right back with you."

Williams got back in his car and Caliendo returned to the squad car. After a few minutes, Caliendo approached Williams, handed him a piece of paper and told him to pretend to write on it.

Williams told Caliendo that he had a $10 bill and a $20 bill and asked, "What do you want?" Williams had his wallet in his hand. Caliendo reached into the wallet and took the $20 bill. Williams testified that he had the following conversation with Caliendo:

"OFFICER WILLIAMS: Do you want 10, also?

CALIENDO: Well, if you want me to have it. If you want to, it's all right with me."

Caliendo reached into the wallet, took the $10 bill, and returned to his squad car. Williams drove away.

Immediately after leaving Caliendo and Secor, Williams met with evidence technician Frank Kenny. Officer Kenny removed the hidden tape recorder and took possession of the recording of the conversation between Williams and Caliendo.

Secor testified that on May 18, he and Caliendo stopped Williams after he made a U-turn. Caliendo got out to speak with Williams. Secor exited the police vehicle to check Williams' vehicle and then returned to the squad car. Secor never had a conversation with Williams and did not exit the squad car again. Secor testified that he recognized Caliendo's voice on the tape recording.

Caliendo gave the following account of events. After stopping Williams for making a U-turn, both Caliendo and Secor exited the police vehicle. Secor checked Williams' car and then returned to the police vehicle. Caliendo testified that the area of the alleged incident had heavy foot traffic and there was an outdoor cafe approximately six to eight feet from the curb.

Caliendo engaged in a conversation with Williams and Williams told him that he was unfamiliar with the area and was simply trying to get back to his home on the south side. Caliendo took Williams' driver's license and told him to have a seat in his car. Caliendo then returned to his squad car with the license. Caliendo testified that he tried to run Williams' license on the computer, but was unsuccessful because the computers were down.

Caliendo then went back to Williams' car and returned his license. Caliendo testified that he did not issue Williams a ticket, but did ask him to sign a miscellaneous paper so that it looked like Williams had received a ticket. Caliendo testified that he did this because many people were watching the incident and he did not want them to think that he let everyone go.

Caliendo testified that he had his radio on while he was talking to Williams and the radio was about six inches from his ear. He testified that additional noise was generated by traffic and pedestrians as well. Caliendo testified that due to the radio and other noise, he was unable to hear everything that Williams said to him. He did not hear Williams offer him a $20 bill or a $10 bill, and he did not take any money from Williams.

On cross-examination, Caliendo admitted that he recognized his voice on the tape. He also testified that he heard Williams offer money on the tape, but maintains that Williams did not offer him money during the traffic stop.

### THE DECISION

On September 10, 1990, the Board issued its findings and decision. Caliendo and Secor were found guilty of all charges, and the Board ordered them discharged from the department.

On or about October 12, 1990, Caliendo and Secor attempted to file a motion for reconsideration before the Board. They petitioned the circuit court for administrative review the same day. On November 19, 1991, the superintendent of police filed a motion to strike various allegations from plaintiffs' complaint for administrative review as well as certain exhibits attached thereto, including the motion to reconsider. On May 17, 1991, after hearing arguments of counsel, the circuit court granted the motion to strike in part and reserved ruling on certain allegations. Plaintiffs were given leave to file additional authority with respect to the points that the court reserved ruling on, but plaintiffs ultimately declined to do so.

On July 25, 1991, the circuit court entered an order affirming the findings and decision of the Board. Caliendo and Secor filed a timely notice of appeal from that order.

### OPINION

The scope of review regarding an administrative agency's decision to discharge a public employee requires a two-step analysis. First, the court must determine if the agency's findings of fact are contrary to the manifest weight of the evidence. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 105.) Second, it must determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge exists. (*Walsh*, 96 Ill. 2d at 105.) An administrative tribunal's finding of "cause" for discharge commands the reviewing court's deference and will not be overturned unless it is arbitrary and unreasonable, or unrelated to the requirements of the service. *Launius*

*v. Board of Fire & Police Commissioners* (1992), 151 Ill. 2d 419, 435; *Walsh*, 96 Ill. 2d at 105-06.

I

■ The first issue before this court is whether the Board's determination that Secor and Caliendo accepted bribes on two occasions in 1984 is against the manifest weight of the evidence. Factual findings made by an administrative tribunal are deemed *prima facie* true and correct. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110; *Launius*, 151 Ill. 2d at 427.) In reviewing the findings of an administrative agency, it is not the function of this court to resolve factual inconsistencies or to reweigh the evidence, but merely to determine whether the findings are against the manifest weight of the evidence. (*Launius*, 151 Ill. 2d at 427-28; *Collura v. Board of Police Commissioners* (1986), 113 Ill. 2d 361, 372-73.) "In order for a court of review to find that an agency's decision is against the manifest weight of the evidence \*\*\*, the court must be able to conclude that 'all reasonable and unbiased persons, acting within the limits prescribed by the law and drawing all inferences in support of the finding, would agree that the finding is erroneous,' [citation] and that the opposite conclusion is clearly evident." (*O'Boyle v. Personnel Board* (1983), 119 Ill. App. 3d 648, 653.) The fact that an opposite conclusion might be reasonable or that this court might have reached a different conclusion is not sufficient to set aside the agency's decision. (*O'Boyle*, 119 Ill. App. 3d at 653.) If there is anything in the record which fairly supports the conclusions of the agency, the decision is not against the manifest weight of the evidence and must be sustained on judicial review. *O'Boyle*, 119 Ill. App. 3d at 653.

Plaintiffs argue that no competent evidence was presented which fairly supports the Board's conclusion that they were guilty of soliciting or accepting bribes. With respect to the alleged bribery incident of May 7, 1984, plaintiffs argue that the only evidence against them was the testimony of Smith which was not credible because (1) it was not corroborated by any other witness or any other tangible evidence, such as a tape recording of the conversation or the introduction of marked bribe money, and (2) because after six years, Smith could not recall whether there was any foot traffic passing by, whether the amount of the bribe was $20 or $25, or whether Secor was later searched for the bribe money.

Plaintiffs' argument goes to Smith's credibility as a witness. The weight to be given to the evidence and the credibility of witnesses is within the province of the Board. (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 513.) Plaintiffs were allowed to fully develop the incon-

sistencies of Smith's testimony on cross-examination and had the opportunity to argue that the testimony was not credible during closing argument. The Board was well apprised of the complained-of inconsistencies in Smith's testimony and nonetheless found him to be a credible witness. It is not the function of this court to reweigh the evidence presented to an administrative tribunal, but instead to determine whether the findings are supported by some evidence. (*Collura*, 113 Ill. 2d at 272-73.) In this case, Smith testified that Caliendo and Secor pulled him over for making a U-turn and Smith asked what could be done. In response, Secor told him to be discreet and accepted his offer of $20. This testimony was sufficient to support the Board's decision. Accordingly, we conclude that the Board's determination that Caliendo and Secor participated in a bribery transaction on May 7, 1984, is not against the manifest weight of the evidence.

With respect to the alleged bribery incident on May 18, 1984, plaintiffs argue that the Board's determination is against the manifest weight of the evidence because the only evidence against them consisted of an inadmissable copy of a tape recording and the incompetent testimony of Williams.

Initially, plaintiffs maintain that the tape was inadmissible because the original was lost and no chain of custody could be established for the copy presented at the hearing. Although the record indicates that the tape itself was admitted into evidence by the Board, the record also indicates that the contents of the tape were not played at the hearing. We do not find the admission of the tape itself to be error. Assuming *arguendo* that the admission of the tape was improper, the error was harmless because even without the tape, the evidence was sufficient to sustain the decision of the Board. Williams testified that on May 18, 1984, Caliendo accepted a $30 bribe from him in lieu of issuing a traffic ticket, and his testimony was sufficient to sustain the Board's decision.

Plaintiffs next contend that Williams' testimony should have been disregarded by the Board because he had no independent recollection of the conversation which took place on May 18, 1984, before he listened to the tape recording which possessed no indicia of reliability. In addition, plaintiffs claim that Officer Williams' testimony was not credible because he was unable to identify Caliendo at the earlier criminal trial, and he mistakenly testified that Caliendo was driving the squad car.

The fact that Williams refreshed his recollection with a tape which is alleged to be unreliable does not affect the admissibility of his testimony; it goes only to his credibility as a witness. (*Corrales v. American Cab Co.* (1988), 170 Ill. App. 3d 907, 911.) Likewise, plaintiffs' allegations concerning Williams' ability to identify Caliendo also go to his

credibility. It is the function of the Board to assess the credibility of the witnesses and this court will not reweigh the evidence. (*Jackson*, 105 Ill. 2d at 513.) We conclude that the Board's determination that Caliendo and Secor engaged in an act of bribery on May 18, 1984, is not against the manifest weight of the evidence.

## II

Next, we must determine whether the Board's decision that there was cause to discharge the plaintiffs was arbitrary and unreasonable or unrelated to the requirements of service. (See *Walsh*, 96 Ill. 2d at 105.) "Cause" for discharge has been defined as "some substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position." *Department of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 551.

A single finding of a violation of a single department rule may be sufficient grounds for discharge. (See, *e.g., Kinter v. Board of Police & Fire Commissioners* (1990), 194 Ill. App. 3d 126, 134; *Rispoli v. Police Board* (1989), 188 Ill. App. 3d 622, 638.) In this case, the police board imposed the sanction of discharge upon finding that plaintiffs' conduct violated four department rules: (1) bringing discredit on the police department; (2) using official position for personal gain; (3) failing to report promptly any crime; and (4) soliciting or receiving a gratuity. Moreover, discharge is· an appropriate sanction when a police officer's misconduct manifests a disrespect for the law and tends to undermine public confidence in the honesty and integrity of the police force. (*Kappel v. Police Board* (1991), 220 Ill. App. 3d 580, 592.) Surely, engaging in bribery manifests a disrespect for the law and tends to undermine public confidence in the police force.

■ Plaintiffs do not argue that the sanction of discharge is unreasonable or arbitrary based solely upon the facts of their case, however. Instead, plaintiffs argue that when their case is compared to other cases in which police officers were found guilty of violating police rules, it becomes apparent that they were subject to arbitrary and unreasonable treatment.

In their petition for administrative review before the circuit court, plaintiffs alleged that the Board's decision to discharge them was arbitrary and unreasonable because other officers who engaged in similar conduct in unrelated cases (the Wagon Men) were merely suspended. Plaintiffs attached a report of proceedings from one of the Wagon Men decisions to their complaint. This evidence was not presented to the

Board. The trial court determined that evidence of other unrelated Board cases was irrelevant and struck all allegations and submissions relating thereto. Plaintiffs contend that the circuit court's refusal to consider evidence of sanctions given in other Board cases or to remand the case to the Board for further hearing on the matter constituted an abuse of discretion. We disagree.

Judicial review of administrative decisions is restricted to the record compiled by the agency. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110; *Crabtree v. Illinois Department of Agriculture* (1989), 128 Ill. 2d 510, 517.) No new or additional evidence shall be heard by the court. (Ill. Rev. Stat. 1989, ch. 110, par. 3—110; *Crabtree v. Illinois Department of Agriculture* (1989), 128 Ill. 2d 510, 517.) Since the evidence of sanctions given in other Board cases did not constitute part of the administrative record before the circuit court, the court was precluded from considering this evidence.

Plaintiffs argue that the Board's decisions in the Wagon Men cases were not available until after the conclusion of their hearing and, therefore, could not have been presented to the Board. Plaintiffs assert that the Wagon Men cases constituted new evidence and the trial court should have remanded the case to the Board for further proceedings.

The question of whether to remand a case to an administrative tribunal for further hearing is a matter which lies within the discretion of the trial court. (Ill. Rev. Stat. 1989, ch. 110, par. 3—111(7); *Salvation Army v. Department of Revenue* (1988), 170 Ill. App. 3d 336, 346.) Section 3—111 of the Code of Civil Procedure provides in relevant part:

> "§3—111. Powers of circuit court. (a) The Circuit Court has power:
>
> * * *
>
> (7) where a hearing has been held by the agency, to remand for the purpose of taking additional evidence when from the state of the record of the administrative agency or otherwise it shall appear that such action is just. However, no remandment shall be made on the ground of newly discovered evidence unless it appears to the satisfaction of the court that such evidence has in fact been discovered subsequent to the termination of the proceedings before the administrative agency and that it could not by the exercise of reasonable diligence have been obtained at such proceedings; *and that such evidence is material to the issues* and is not cumulative." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110, par. 3—111.)

Under the statute, newly discovered evidence does not warrant remandment if it is not material. Evidence is material where it is *relevant* and

goes to substantial matters in dispute. (*Wolfe v. Board of Education* (1988), 171 Ill. App. 3d 208, 212.) In the case at bar, the trial court did not remand the case to the Board for further proceedings; the trial court found that the evidence of unrelated incidents did not provide a valid basis for comparison and, therefore, was irrelevant.

Relying on *Wilson v. Board of Fire & Police Commissioners* (1990), 205 Ill. App. 3d 984, plaintiffs argue that the trial court's conclusion that the other Board decisions were irrelevant was erroneous. In *Wilson*, two police officers were found guilty of violating police department rules and regulations. Although the violations arose from the *same incident*, separate hearings were held. One police officer was suspended for 30 days and the other was discharged. Both parties petitioned for administrative review in the circuit court and again separate hearings were held. The decisions of the Board were upheld in both instances.

On review, the appellate court found that as the events surrounding the two cases were *completely related* there appeared to be a gross disparity between the two sanctions. (*Wilson*, 205 Ill. App. 3d at 992.) Therefore, the appellate court remanded the case for a new hearing on the appropriateness of the ordered sanctions. (*Wilson*, 205 Ill. App. 3d at 992.) *Wilson* did not involve a comparison of the complaining police officers' sanctions to the sanctions given to other police officers in *unrelated* incidents. Therefore, *Wilson* is inapposite to the case at bar.

In *Launius*, our supreme court recognized that "[a]n administrative tribunal's finding of 'cause' for discharge may be considered arbitrary and unreasonable when it is compared to the discipline imposed in a *completely related* case" like *Wilson* (emphasis added) (*Launius*, 151 Ill. 2d at 441-42), but the court emphasized that cause for discharge can be found regardless of whether other employees have been disciplined differently. (*Launius*, 151 Ill. 2d at 442; see also *Jones v. Civil Service Comm'n* (1979), 80 Ill. App. 3d 74, 76.) In *Launius*, two police officers were disciplined for misconduct arising during a flood. The defendant, Launius, was discharged after leaving his post to check on his family after being denied permission to do so. Launius presented evidence to the police board that another officer, Czyzewski, only received a suspension when he refused to come to work on an off-duty day after his superior ordered him to report for duty because of the emergency conditions created by the flood. The supreme court held that the facts of the two cases were not sufficiently related to conclude that the board's decision to discharge Launius was arbitrary and unreasonable. *Launius*, 151 Ill. 2d at 442.

In *Launius*, the same surrounding circumstances, the emergency conditions created by a flood, gave rise to the officers' misconduct. Yet

the supreme court determined that the facts were not similar enough to conclude that the imposition of different sanctions under these circumstances was arbitrary and unreasonable. In the case at bar, the decisions that plaintiffs submitted to the trial court did not involve the same surrounding circumstances. The bribes accepted in the Wagon Men cases took place during different times under completely unrelated circumstances. Furthermore, the Wagon Men pled guilty to criminal charges instead of going to trial like the plaintiffs. In light of the complete lack of similarity between plaintiffs' case and the Wagon Men cases presented to the trial court, we cannot say that the trial court abused its discretion in concluding that the evidence was irrelevant and, therefore, did not warrant remand.

### III

■ Plaintiffs next contend that they were deprived of their due process right to an impartial tribunal. Plaintiffs assert that the Board was biased against them because: (1) the members of the Board, the hearing officer, and the assistant corporation counsel who presented the police department's case against plaintiffs are all "connected to the City of Chicago," and (2) because "the hearing officer made a determination of their guilt at the conclusion of the City's case." Plaintiffs point to the following exchange between the trial court and counsel in support of their contention that the hearing officer made a determination of guilt before they were allowed to present their case:

> "HEARING OFFICER HALL: I am going to deny your motion to reconsider. For the record, so you will have a basis for appeal my belief is that Marion Williams who is a party to the tape, has testified and corroborated what is on the tape; and therefore, because this is an administrative review matter, it is admissible as evidence against Officers Caliendo and Secor.
>
> Now, the Department has rested in this matter and you have not, is that correct?
>
> MR. JALOVEC: That's correct. I'm going to call some witnesses, Mr. Hall."

Plaintiffs' argument fails to set forth a genuine claim of partiality. Due process does guarantee the right to an impartial tribunal in an administrative proceeding. (*Collura*, 113 Ill. 2d at 369.) However, it is not enough to complain merely that investigator, prosecutor, and adjudicator are all institutionally connected. (See *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 54-55.) This same complaint could be made in the majority of agency cases. Rather, plaintiffs must " 'overcome a presumption of honesty and integrity in those serving as

adjudicators' " by showing in the record that the administrative proceeding " 'was either tainted by dishonesty or contained an unacceptable risk of bias.' " *Scott*, 84 Ill. 2d at 55-56, quoting *Martin-Trigona v. Underwood* (7th Cir. 1975), 529 F.2d 33, 37.

Plaintiffs attempt to make such a showing by pointing to the hearing officer's statement that he was providing his reasons for overruling plaintiffs' objection to the admissibility of the tape recording "so [plaintiffs] would have a basis for appeal." This statement, however, does not demonstrate either bias or that the hearing officer had already decided the case against plaintiffs without hearing all the evidence. Although judges, as well as hearing officers, need not state a reason for their evidentiary rulings, they often do so to give a reviewing court a more complete record. It is entirely proper for the trier of fact to state the basis of its evidentiary rulings (*South Park Commissioners v. Ayer* (1910), 245 Ill. 402, 410), which is precisely what the hearing officer did in this case. We conclude that plaintiffs were not deprived of any due process rights by the Board during the hearing.

## IV

■ Finally, plaintiffs argue without citation to any authority that their due process rights were violated because the police department suspended them without pay and did not interview them prior to suspending them.

Due process is satisfied when a party receives notice of the charges against him, a hearing before an impartial tribunal and the opportunity to defend himself before the tribunal. (*Sheehan v. Board of Fire & Police Commissioners* (1987), 158 Ill. App. 3d 275.) Plaintiffs were not denied any of these fundamental rights during the proceedings before the Board; consequently, plaintiffs were not deprived of due process.

For all of the foregoing reasons, we affirm the judgment of the circuit court upholding the Board's decision to discharge the plaintiffs.

Affirmed.

GORDON, P.J., and MURRAY, J., concur.