2023 IL App (1st) 220556-U

SIXTH DIVISION
June 16, 2023

No. 1-22-0556

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| BRIDGETT ROLLING, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, |
| | ) | Chancery Division |
| v. | ) | |
| | ) | No. 2019 CH 08870 |
| THOMAS J. DART and the | ) | |
| COOK COUNTY SHERIFF'S DEPARTMENT, | ) | The Honorable |
| | ) | Anna M. Loftus |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Mikva and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The judgment of the circuit court is affirmed. We conclude that the Merit Board's findings were not against the manifest weight of the evidence, the sanction it imposed was supported by sufficient cause, and its decision was not barred by laches.

¶ 2                              I. BACKGROUND

¶ 3    Officer Bridgett Rolling started working as a correctional officer with the Cook County Sheriff's Office (CCSO) in February of 1995. On August 23, 2005, when Rolling was off duty, she was arrested and charged with criminal trespass to a motor vehicle and resisting arrest.

Rolling claimed she provided written notice of the incident to her superintendent, James Scaife, but admitted she never independently reported her arrest to the Internal Affairs Division (IAD) of the CCSO, as required by CCSO General Order 3.8 ("Employees will submit written notification within five (5) working days of any criminal arrest, indictment, or conviction for a felony or misdemeanor, to the divisional Superintendent/Unit Head and the department Internal Investigations Unit.")

¶ 4    To report an arrest to IAD in 2005, an employee could either report in person to IAD or submit a memo, which would then be stamped, marked, and put in IAD's file. The employee would then receive a stamped copy of the memo and be de-deputized pending the outcome of IAD's investigation. (IAD's name was changed to the Office of Professional Review (OPR) in 2008.)

¶ 5    On March 1, 2006, Rolling appeared in court and pleaded guilty to an amended charge of disorderly conduct. She was sentenced to 12 months supervision and ordered to pay $189. She claims she told her superintendent, Scaife, about what transpired at her court proceeding, but admitted she never notified IAD of the outcome.

¶ 6    Rolling was arrested again in 2007 and was charged with obstructing a police officer, battery of a police officer, and resisting arrest. She did report this arrest to IAD. She then proceeded to a hearing before the Merit Board and received a 150-day suspension as a sanction.

¶ 7    In 2013, the CCSO's Office of Policy and Accountability performed a routine background check of CCSO employees. Afterwards, it notified OPR that Rolling had been arrested in 2005 and 2007. OPR was already aware of Rolling's 2007 arrest because she had reported it to IAD, but it was unaware of her 2005 arrest.

¶ 8       Investigator Jonathan Myslinski searched OPR's databases for notifications about any arrests or charges for Division XI employees – Rolling's division – from approximately August 2004 to August 2006. He searched the IAPro Case Management System, OPR's current database, as well as the Microsoft Access Program, the database IAD used from "the early nineties" until 2008. He found an arrest notification for another officer during his search, but nothing regarding Officer Rolling. If IAD had been notified of Rolling's arrest, it would have been documented in OPR's databases.

¶ 9       OPR Investigator Ashley O'Connor was assigned to investigate the circumstances surrounding Rolling's 2005 arrest. She interviewed Rolling on January 21, 2015. Rolling attended the interview with her union representative, William Scott. Senior Investigator John Kerlin was also present.

¶ 10      At the outset of the interview, O'Connor presented Rolling with three forms: the Notification of Allegations, the Request to Secure Legal Counsel or Union Representative, and her Administrative Proceeding Rights. Rolling signed all three forms, waived her right to secure counsel for the interview, and proceeded with her union representative present.

¶ 11      When O'Connor asked Rolling about her 2005 arrest, Rolling said she met a man who took her for a ride on his motorcycle, and they stopped at a gas station for gas. When the man went inside the gas station, police pulled up and ordered Rolling to get off the motorcycle. After she complied, the police pushed her against the gas pump and grabbed at her hands until they were able to handcuff her. Rolling announced that she worked for the sheriff's office, but she was arrested and taken to the police station. She said she did not know why she was being arrested until she arrived at the police station.  She also said she did not know the motorcycle was stolen, and did not resist arrest.

¶ 12    After she was released, Rolling said she went to her superintendent, James Scaife, and wrote a memorandum about the arrest, but she could not remember if she delivered a copy to IAD or not. She did not bring a copy of the memorandum to her 2015 interview.

¶ 13    When O'Connor asked her about the disposition of the case, Rolling said the 2005 case was dismissed. She said she did not remember receiving a year of supervision, did not receive a fine, and did not notify her supervisor about any conviction because she was found not guilty.

¶ 14    After the interview had concluded, O'Connor typed up a statement, summarizing their discussion. She and Rolling went over the statement, line by line, and O'Connor wrote down the changes Rolling requested. O'Connor then reviewed the statement with Rolling a second time, asked if Rolling was okay with the changes, and Rolling confirmed that she was.

¶ 15    Before Rolling could sign the statement, however, Scott took her outside. When they returned, Scott said, "We're shutting this down. We want an attorney." O'Connor indicated that the interview was already complete and she did not plan to reinterview Rolling, but Scott advised Rolling not to sign the statement. O'Connor notified Rolling that she would be obstructing the investigation if she failed to sign. Rolling declined to sign the statement.

¶ 16    O'Connor concluded that Rolling had violated a number of CCSO rules because (1) she had been arrested, charged, and convicted of a crime, (2) she did not notify OPR (then IAD) of her arrest or conviction, (3) she displayed conduct unbecoming of a CCSO employee when she announced her office to the police at the gas station, (4) her off-duty conduct reflected negatively on the office, (5) she did not tell the truth during her interview, and (6) she failed to cooperate by refusing to sign her statement, thereby obstructing the investigation. O'Connor then sent her findings to her director for review, and Assistant Executive Director Jerome Graber recommended that Officer Rolling be terminated.

¶ 17    On July 29, 2015, Sheriff Dart filed a complaint with the Merit Board, requesting Rolling's termination for (1) failing to obey all federal and local laws, (2) failing to report her arrest and guilty plea to CCSO, (3) engaging in behavior off-duty that reflected negatively on CCSO, and (4) failing to cooperate with and providing false statements to OPR in violation of CCSO General Orders 3.8 and 4.1, Sheriff's Order 11.2.20.0, and Article X, Paragraph B of the Merit Board's Rules and Regulations.

¶ 18    Rolling's Merit Board hearing was held on February 7, 2017. On July 22, 2019, the Merit Board found that Rolling "engaged in conduct unbecoming of an officer, conduct that reflected negatively upon her position as a Corrections Officer for the Cook County Sheriff." It also concluded that she "furnished false information to OPR during her January 20, 2015[,] interview," and found she was "less th[a]n credible in her testimony" in violation of General and Sheriff's orders. The Merit Board noted that it was "trouble[ed]" by Rolling's "evasiveness to the questions that were asked of her and her failure to respond to the questions in a manner expected of a law enforcement officer." It found Rolling "would have one believe that she did not plead guilty to a crime connected to the events of August of 2005" even after she was confronted with a transcript of her 2006 criminal proceeding, which confirmed her guilty plea to disorderly conduct. The Merit Board found that Rolling violated General Orders 3.8 and 4.1, Sheriff's order 11.2.20.0, and Article X, Paragraph B of the Merit Board's Rules, and terminated her employment with CCSO, effective July 29, 2015.

¶ 19    Rolling challenged the Merit Board's decision in the circuit court. She argued that its findings were against the manifest weight of the evidence, that the sanction it imposed lacked just and sufficient cause, and that its decision is barred by laches. After the circuit court affirmed the Merit Board's decision, Rolling appealed.

¶ 20                                    II. ANALYSIS

¶ 21     Rolling argues that the Merit Board's findings were against the manifest weight of the evidence. In an appeal from the judgment of an administrative review proceeding, we review the decision of the Merit Board, not the circuit court. *Krocka v. Police Board of the City of Chicago,* 327 Ill. App. 3d 36, 46 (2001). The Merit Board's findings of fact are *prima facie* true and correct. *Kappel v. Police Board of the City of Chicago*, 220 Ill. App. 3d 580, 588 (1991). "It is not the court's function to resolve factual inconsistencies, nor is it the court's duty to weigh the evidence and then determine where the preponderance of the evidence lies." *Launius v. Board of Fire and Police Commissioners of the City of Des Plaines,* 151 Ill. 2d 419, 427-28 (1992). Instead, if sufficient evidence supports the Merit Board's findings, its decision will not be reversed. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 534 (2006). In fact, "if there is anything in the record which fairly supports the action of the agency, the decision is not against the manifest weight of the evidence and must be sustained on judicial review." *O'Boyle v. Personnel Board of the City of Chicago,* 119 Ill. App. 3d 648, 654 (1983); *Lopez v. Dart,* 2018 IL App (1st) 170733, ¶ 70.

¶ 22     We conclude that the Merit Board's findings are not against the manifest weight of the evidence. First, the evidence supports a finding that Rolling violated General Order 3.8 III(A)(3), which requires all employees to "submit written notification *** of any criminal arrest, indictment, or conviction for a felony or misdemeanor, to their divisional Superintendent/Unit Head *and* the departmental Internal Investigations Unit." (Emphasis added.) Rolling testified she reported her arrest to her superintendent, James Scaife, but admitted that she never reported her arrest to IAD. Rolling argues that notifying her superintendent of her arrest should have been sufficient to put IAD on notice and her union representative, William Scott, testified that in 2005,

6

it was general practice for employees to report off-duty incidents to their superintendents, who would then decide "what went to IAD and what didn't." However, Scott also admitted that all employees have a duty to understand the General Orders, and General Order 3.8 requires written notification to both an employee's supervisor and IAD. Despite Rolling's contention that her failure to report her arrest to IAD should be excused because she was never expressly told to report to IAD, her ignorance of the rules is no defense. See *People v. Izzo*, 195 Ill. 2d 109, 115 (2001) ("A principle deeply embedded in our system of jurisprudence is that one's ignorance of the law does not excuse unlawful conduct."); see also *Roman v. Cook County Sheriff's Merit Board,* 2014 IL App (1st) 123308, ¶ 108 (upholding the Board's finding that correctional officers violated DOC general orders and Sheriff's orders by failing to request permission to work secondary jobs despite their assertions that they had been given permission to do so by their superintendent because "they were not excused from complying with the requirements of the DOC general orders and Sheriff's orders.")

¶ 23    Next, the evidence supports the Merit Board's finding that Rolling violated General Order 3.8 III(A)(1), which requires employees to "obey all federal, state, county and municipal laws"; General Order 4.1(III), which states that employees may be disciplined for misconduct and defines "serious misconduct" as "violations of the law which constitute[] a misdemeanor or felony"; and CCSO's Merit Board Rules and Regulations Article X(B), which prohibits employees from "violat[ing] any Law or Statute of any State." It is undisputed that Rolling broke these rules, as evidenced by her arrest and subsequent guilty plea to disorderly conduct.

¶ 24    The evidence also supports the Merit Board's finding that Rolling violated General Order 3.8(D)(6), which requires employees to "refrain from engaging in off-duty behavior that would reflect negatively on the department," and General Order 4.1(III), which states that misconduct

7

"may be cause for disciplinary action" and provides that "serious misconduct" includes misconduct "committed while an employee is off duty *** where in the official character and status of the employee as a correctional officer *** becomes identifiable and calls into question the reputation of the County of Cook, the Office of the Sheriff, or the Department of Corrections." Rolling admitted that she identified herself as a corrections officer during her 2005 arrest. And although she denied resisting arrest, she did plead guilty to an amended count of disorderly conduct. Therefore, Rolling's conduct supports the Merit Board's finding that her off-duty conduct "reflect[ed] negatively on the department" and "call[ed] into question the reputation" of the CCSO.

¶ 25    The evidence also supports the Merit Board's finding that Rolling "furnished false information to OPR" during her interview, in violation of Sheriff's Order 11.2.20.0(VI)(D)(25), which states that employees shall not "[f]ail to cooperate or fail to be truthful with external and/or integral agencies in an investigation of a criminal or civil mat[t]er," and 11.2.20.0(VI)(I)(1), which requires employees to "[t]ruthfully answer all questions, *** and provide truthful and relevant statements when the employee is involved in an investigation." During Rolling's 2015 OPR interview, she told Investigator O'Connor that her 2005 criminal case had been dismissed, that she did not remember receiving a year of supervision, that she did not receive a fine, and that she did not notify her supervisor about any conviction because she was found not guilty. Although it is technically true that Rolling's 2005 disorderly conduct charge was dismissed after she successfully completed a year of supervision, her statement to O'Connor – that she was found not guilty – was not true. And although Rolling's other statements are not patently false, they were misleading because they implied that all charges against her had been dismissed and that she had received no sentence from the court. In addition,

8

Rolling violated Sheriff's Order 11.2.20.0 by refusing to sign her statement after her OPR interview, even though O'Connor reviewed the statement with her, line by line, made all changes she requested, and Rolling told O'Connor she was "okay" with the statement. We agree with the Merit Board that, under these circumstances, Rolling's refusal to sign her statement amounted to a failure to cooperate and a failure to truthfully answer questions.

¶ 26    Finally, the evidence supports the Merit Board's determination that Rolling's lack of candor and her "evasiveness to the questions that were asked of her and her failure to respond to the questions in a manner expected of a law enforcement officer" violated General Order 4.1(VI)(I)(1), which requires employees to "[t]ruthfully answer all questions", and 4.1(VI)(D)(25), which states that employees shall not "[f]ail to cooperate or fail to be truthful with external and/or integral agencies in an investigation of a criminal or civil mat[t]er." The Merit Board noted that even after Rolling was confronted with a transcript of her 2006 court proceeding where she pleaded guilty to disorderly conduct, Rolling still refused to admit she had done so, and instead asserted that she "didn't know [she] pled guilty to disorderly conduct" and "d[id]n't remember saying nothing about being guilty." The Merit Board found Rolling's answers to other questions – that she "d[id]n't remember exactly what the charges were" when she was arrested in 2007, and that she "c[ould]n't recall" if she was de-deputized after she reported this arrest to IAD – to be incredible as well, and we defer to its credibility determinations. See *Caliendo v. Martin,* 250 Ill. App. 3d 409, 416 (1993) ("The weight to be given to the evidence and the credibility of witnesses is within the province of the Board.") Taken together, the evidence in the record amply supports the Merit Board's findings.

¶ 27    Rolling next argues that her termination was not for just and sufficient cause. "Because the Board, and not this court, is in the best position to determine the effect of the employee's

conduct on the agency, we accord considerable deference to the agency's discharge decision." *Rios v. Cook County Sheriff's Merit Board*, 2020 IL App (1st) 191399, ¶ 33.

¶ 28    "Cause" has been defined as "some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his [discharge]." *Walsh v. Board of Fire and Police Commissioners of the Village of Orland Park,* 96 Ill. 2d 101, 105 (1983) (quoting *Fantozzi v. Board of Fire & Police Commissioners,* 27 Ill. 2d 357, 360 (1963)). There must be some competent evidence to support the Merit Board's decision. *Magett v. Cook County Sheriff's Merit Board*, 282 Ill. App. 3d 282, 287 (1996). The "cause for discharge can be found regardless of whether other employees have been disciplined differently," (*Launius,* 151 Ill. 2d at 442), and even a single violation can justify termination. *Siwek v. Police Board of the City of Chicago,* 374 Ill. App. 3d 735, 738 (2007).  The question "is not whether this court would decide upon a more lenient sanction than discharge," but instead whether the Merit Board "acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the service." *Sutton v. Civil Service Commission*, 91 Ill. 2d 404, 411 (1982).

¶ 29    We note that "[t]he job of a police officer requires the utmost integrity and honesty." *Rios*, 2020 IL App (1st) 191399, ¶ 34. "[D]ischarge is an appropriate sanction when a police officer's misconduct manifests a disrespect for the law and tends to undermine public confidence in the honesty and integrity of the police force." *Caliendo,* 250 Ill. App. 3d at 418; see also *Village of Oak Lawn v. Human Rights Commission,* 133 Ill. App. 3d 221, 224 (1985) ("[t]rustworthiness, reliability, good judgment, and integrity are all material qualifications for any job, particularly one as a police officer.") In this case, the Merit Board based its termination

10

decision on Rolling's 2005 arrest, her subsequent guilty plea to disorderly conduct, her identification of herself as a corrections officer during the course of her arrest, her failure to report her arrest to IAD, and her dishonesty, lack of cooperation, and evasiveness throughout the course of OPR's investigation and Merit Board proceedings. We find these facts provide sufficient cause for the Merit Board's termination decision.

¶ 30     Rolling argues that termination was too harsh a sanction, and relies on *Wilson v. Board of Fire & Police Commissioners of the City of Markham* to argue that a more lenient sentence should have been imposed. 205 Ill. App. 3d 984 (1990). In *Wilson*, two police officers got into an altercation at work, during which one of the officers suffered a skull fracture. *Id.* at 987-88. As a result of this incident, both officers were found guilty of misconduct. *Id.* at 988. One of the officers was suspended for 30 days, whereas the other officer was discharged. *Id.* at 992. On appeal, the court found that because "the events surrounding these cases were completely related," the "gross disparity in the sanctions levied against the two parties" could not stand. *Id.* at 987, 992.

¶ 31     Unlike *Wilson,* however, Rolling does not ask us to compare her sanction to one received by another officer involved in the same incident. Instead, Rolling asks us to compare her case to completely unrelated cases where officers were merely suspended after failing to report their arrests to IAD. She argues that because these officers were disciplined less severely, the Merit Board's discharge decision was inappropriate here. But "cause for discharge can be found regardless of whether other employees have been disciplined differently," (*Launius,* 151 Ill. 2d at 442), and there need only be some competent evidence to support the Merit Board's decision. *Magett*, 282 Ill. App. 3d at 287. We find the evidence more than sufficient to support the Merit Board's decision here.

¶ 32     In her brief, Rolling minimizes her behavior and seemingly argues that she was discharged based solely on her failure to report her 2005 arrest. However, the Merit Board based its termination decision on a multitude of factors, including (1) her arrest and guilty plea to disorderly conduct, (2) her failure to report her arrest or guilty plea to IAD, (3) her evasive, uncooperative, and dishonest behavior throughout the course of OPR's investigation and her Merit Board hearing, and (4) her exhibition of behavior that reflected negatively on the CCSO. The Merit Board expressly noted that it was "trouble[ed]" by Rolling's "evasiveness to the questions that were asked of her and her failure to respond to the questions in a manner that is expected of a law enforcement officer." The court has affirmed discharge decisions based on similar and even less egregious conduct. See, e.g. *Sindermann v. Civil Service Commission of the Village of Gurnee*, 275 Ill. App. 3d 917, 928-29 (1995) (finding that the Commission's decision to discharge a police officer for failing to report his prior employment and discharge from IDOT on an employment application was not "arbitrary or unreasonable or unrelated to the requirements of serving as a police officer" because he "acted in an irresponsible and dishonest manner" by "deliberately omitting this information from his application"); see also *Slayton v. Board of Fire and Police Commissioners of the Village of Streamwood,* 102 Ill. App. 3d 335, 337, 339 (1981) (finding the evidence sufficient to uphold the Board's discharge decision of a police officer after the officer made false statements to another police officer in order to protect his friend); *Grabinger v. Conlisk*, 320 F. Supp. 1213, 1219-20 (N.D. Ill. 1970) (noting that "a law enforcement officer is in a peculiar and unusual position of public trust and responsibility, and by virtue thereof, the public body has an important interest in expecting the officer to give frank and honest replies to questions relevant to his fitness to hold public office.") We find that

12

the Merit Board did not act unreasonably or arbitrarily here, and it had just and sufficient cause to terminate Rolling.

¶ 33 Lastly, Rolling argues that laches should bar the Merit Board's decision because it took so long to bring this claim. "*Laches* is an equitable principle that bars relief to a party whose unreasonable delay in bringing an action for relief prejudices the rights of the other party." *Hayes v. State Teacher Certification Board,* 359 Ill. App. 3d 1153, 1167 (2005). A party claiming laches "must show more than a mere passage of time" and instead must prove they were "materially prejudiced" by an "unreasonable delay." *Id.* If a party has contributed to the delay or has not been injured by the delay, laches does not apply. *Baylie v. Swift & Company*, 283 Ill. App. 3d 421, 431-32 (1996); *City of Countryside v. City of Countryside Police Pension Board of Trustees*, 2018 IL App (1st) 171029, ¶ 64.

¶ 34 CCSO filed its complaint against Rolling in 2015 based largely on Rolling's 2005 arrest, her subsequent guilty plea, her failure to report the 2005 arrest to IAD, and her lack of cooperation with OPR during its investigation. Rolling argues that the Merit Board's failure to file its complaint sooner prejudiced her. CCSO argues that laches does not apply because it was Rolling's own failure to report her arrest to IAD in 2005 that resulted in its inability to file its complaint any sooner.

¶ 35 Rolling contends that notifying her superintendent about her 2005 arrest was sufficient to put all of CCSO – including IAD – on notice and, therefore, CCSO's failure to take any action against her until 2015 constitutes an unreasonable delay. As noted above, however, General Order 3.8 requires CCSO employees to report any arrests to their supervisor and to IAD, and Rolling admitted she did not report her arrest to IAD. Testimony established that if Scaife had reported Rolling's arrest to IAD on her behalf, it would have shown up in IAD's database, and

13

Rolling would have been called in to IAD and de-deputized pending an official investigation. The fact that this never occurred supports CCSO's contention that it was unaware of Rolling's arrest until it performed a routine background check of CCSO employees in 2013. Laches does not apply because it was Rolling's failure to timely report her arrest to IAD that resulted in CCSO's delay in filing its complaint.

¶ 36     We also find laches inapplicable here because Rolling cannot demonstrate that she suffered any prejudice as a result of the delay. Rolling argues that she was prejudiced because her former superintendent, Scaife, was unavailable to testify on her behalf, but his testimony would not change the following uncontested facts: Rolling was arrested and charged with resisting arrest in 2005, she pleaded guilty to disorderly conduct, and she failed to timely report her arrest to IAD as required by General Order 3.8, all of which provide sufficient cause for discharge.

¶ 37     Rolling's reliance on *Mank v. Board of Fire and Police Commissioners, Granite City*, 7 Ill. App. 3d 478 (1972), is misplaced. In *Mank,* a police officer was discharged based on six different charges. *Id.* at 481. The trial court reversed the discharge decision, finding that the charges involving undue force were barred by laches. *Id.* at 485. The court noted that the charges were filed 39-44 months after the incident occurred, testimony about what occurred was "conflicting," and several witnesses had been unavailable to testify. *Id.* The court reasoned that this length of time would be sufficient to cause prejudice, especially "where the factual dispute is solely dependent on recollection." *Id*. at 486.

¶ 38     Here, by contrast, the case does not turn on recollection. Although CCSO's complaint was filed approximately ten years after Rolling's 2005 arrest, several of the charges that form the basis for her termination are uncontested. Rolling admitted that she was arrested in 2005, and the

transcript from her court hearing shows that she pleaded guilty to disorderly conduct, that she was ordered to pay $189, and that she was sentenced to a year of supervision. In addition, Rolling admitted that she never reported her arrest or the outcome of her court hearing to IAD. These facts, standing alone, provide sufficient cause for her discharge. Nothing that Rolling's former superintendent, Scaife, could have said would have changed the outcome here. Laches does not apply.

¶ 39                                          III. CONCLUSION

¶ 40     For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 41     Affirmed.